146 N.J. Super. 393 (1977)
369 A.2d 1003
MARLENE SOLIMANO, PLAINTIFF,
v.
CONSOLIDATED MUTUAL INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 13, 1977.
*394 Messrs. Breslin & Schepisi for plaintiff (Mr. Edward F. Breslin of counsel).
Messrs. Feinberg, Feinberg & Tritsch, Attorneys for defendant (Mr. Bruce A. Tritsch of counsel).
*395 MORRISON, J.C.C., Temporarily Assigned.
Plaintiff's verified complaint annexed to the order to show cause establishes (solely for the purposes of this motion) that on November 21, 1975 plaintiff, while operating her motor vehicle in returning home from work, was involved in an accident with another vehicle. The automobile she was driving had, at that time, the mandatory PIP coverage under a policy written by defendant Consolidated Mutual Insurance Company. Plaintiff gave notice of the accident to defendant and made claim for personal injury benefits under the policy provisions, in accordance with N.J.S.A. 39:6A-4.
Soon thereafter Consolidated Mutual began to make payments to plaintiff for her loss of wages and her ongoing medical expenses. These payments continued until July 15, 1976 when, by letter of that date, Consolidated Mutual informed plaintiff that no further payments would be made. Accordingly, Consolidated Mutual ceased paying PIP benefits.
Underlying Consolidated Mutual's decision to terminate benefits was its interpretation of N.J.S.A. 39:6A-6. It contended (and it has maintained this position throughout) that the provisions of the statute regarding credits to the insurer for benefits collectible under workmen's compensation obviated its obligation to pay PIP benefits. Consolidated Mutual made a unilateral determination that plaintiff's injuries were compensable under workmen's compensation. As a result of this "determination" it asserted that plaintiff must seek workmen's compensation benefits since its contractual obligation to pay PIP benefits is suspended pending the outcome of any Compensation claim.
In this action, plaintiff seeks an order (1) Compelling Consolidated Mutual to reimburse her for medical expenses incurred since July 15, 1976, and (2) requiring defendant to pay income continuation benefits and future medical benefits as they accrue.
The problem in this situation arises as a result of the inherent condition precedent to a determination of collectibility, *396 i.e., in order to be "collectible," as that term is used in the statute (and under the facts presented herein), the injury must be declared "compensable" by the Division of Workers' Compensation. N.J.S.A. 34:15-1 et seq. Without some clarification, this court foresees a recurrence of this dilemma in every case in which there is some nexus, however slight, between the injury and employment.[1]
This case hinges upon an interpretation of a deceptively perplexing statutory provision, N.J.S.A. 39:6A-6, entitled "Collateral source." It states:
The benefits provided in section 4a., b., c., d., and e. and section 10, shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits collectible under workmen's compensation insurance, employees temporary disability benefit statutes and medicare provided under Federal law, shall be deducted from the benefits collectible under section 4a., b., c., d. and e. and section 10.
The provision reads easily up to the word "except"; however, at that point the quagmire begins. The statute poses two obvious, yet unanswered, questions: (1) who is to determine "collectible benefits," and (2) In the interim between injury and the determination of collectibility, what is the obligation of the PIP carrier?
If we take defendant's reading, a PIP claimant must dispose of the possibility of collecting from another source (when that issue is raised by the carrier) via a claim in workmen's compensation before she may look to the PIP carrier for policy benefits. This would leave the issue of collectibility squarely in the insured's lap while the insurer sits back  awaiting the outcome of the compensation claim  with its contractual payments in abeyance.
*397 Clearly, an adoption of the PIP carrier's position would fly in the face of the policy behind the No-Fault Act. From its inception, the public policy surrounding the legislation has been "to provide appreciable reparation for all New Jersey accident victims promptly, fairly, and efficiently." See State of New Jersey Automobile Insurance Study Commission Report to the Governor and Legislature, Reparation Reform for New Jersey Motorists, xii (1971). This policy was implemented by the Legislature in N.J.S.A. 39:6A-16, which provides that the No Fault Act "shall be liberally construed so as to effect the purpose thereof."
In interpreting that section this court has stated:
It is apparent that the purpose of the act is to provide for prompt payment of medical bills, lost wages and property damage without having to await the outcome of protracted litigation. [Harris v. Osorio, 125 N.J. Super. 468, 469 (Law Div. 1973)]
To the above quotation from our opinion in Harris we now add the words "or an involved claim in workmen's compensation." Simply stated, the No Fault Act was designed to get the bills paid and keep the injured insured, and those who must rely upon him or her for support, off the public assistance rolls. An implementation of Consolidated Mutual's position would require a judicial mandate to the least capable party (i.e., the injured, oftentimes debilitated, insured) to exhaust all possibilities for recovery before turning to his primary source of reimbursement  the PIP carrier. This position is contrary to the letter and spirit of the No Fault Act and the recent decisions of our courts interpreting it. We therefore reject it.
However, this does not resolve the entire dilemma. The statute goes on to provide a deduction for benefits collectible from any of the three enumerated sources. We read this provision as providing a statutory right to a deduction that belongs to the PIP carrier. This deduction was established to partially offset the insurer's burden in its role as the primary source of recovery.
*398 We feel that this is the only logical interpretation that can be gleaned from the wording of the statute. If the Legislature intended otherwise, it would have provided some mechanism for the remittance of, or subrogation rights to, benefits received from these collateral sources. No mention of remittance or subrogation exists in N.J.S.A. 39:6A-6.
Furthermore, any alternative reading would require a PIP carrier to await the disposition of the compensation or disability claim before asserting any claim for reimbursement. This proposition fails to give due accord to the statutory language and, more importantly, fails to confront the practical realities surrounding an accident involving PIP coverage. In the first instance, the claimant (as previously noted) is often physically unable to immediately pursue the claim due to the gravity of the injuries suffered. Secondly, a person who is being reimbursed by a PIP carrier does not have the motivation to pursue the claim since he knows that any dollars recovered for medical expenses and employment disability (up to the $100 a week maximum) will go to the PIP carrier and not himself. We take judicial notice of human nature and the general lack of combativeness by people who are not financially involved in a dispute. Our system recognizes this and has accommodated it by the device of the "real party in interest" in lawsuits. If we require the PIP carrier to await action by the insured, we leave the PIP carrier in a state of limbo (i.e., having paid benefits immediately, he must now await a determination that, in all probability, will never come since the potential initiator of the claim lacks the fervor of mind and heart to pursue it). Since fairness for all concerned is the touchstone for the no fault system, we could not possibly condone such a situation.
This court recognizes that the exercise of the insurer's right to a deduction can only occur after an adjudication by the respective agency of the amount collectible from the "collateral source." We have already acknowledged that the carrier must pay PIP benefits promptly as those payments become *399 due. This leaves us with one remaining hurdle  what avenue exists for the carrier to pursue its statutory right to this deduction? Presently, the answer is none. This appears to be a classic example of a right being created without the concomitant remedy. See Phelps Dodge, & etc., Corp. v. United, etc., of America, 138 N.J. Eq. 3 (1946). We feel it is this court's duty to rectify this situation in the interests of justice: "Let the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path. Griswold v. Hazard, 141 U.S. 260, 284, 11 S.Ct. 972, 999, 35 L.Ed. 678." Westinghouse Electric Corp. v. United Electrical, 139 N.J. Eq. 97 (1946).
We turn our attention to the Workmen's Compensation Act, N.J.S.A. 34:15-1 et seq., for the solution. Assuming arguendo that this is a compensable claim, the employer would be responsible for providing medical and surgical treatment:
The employer shall furnish to the injured workman such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury * * *. [N.J.S.A. 34:15-15]
In conjunction with that provision we read N.J.S.A. 34:15-15.1:
Whenever the expenses of medical, surgical or hospital services, to which the petitioner would be entitled to reimbursement if such petitioner had paid the same as provided in section 34:15-15 of the Revised Statutes, shall have been paid by any insurance company or other organization by virtue of any insurance policy, contract or agreement which may have been procured by or on behalf of such petitioner, or shall have been paid by any person, organization or corporation on behalf of such petitioner, the deputy directors or referees of the Division of Workmen's Compensation are authorized to incorporate in any award, order or approval of settlement, an order requiring the employer or the insurance carrier to reimburse such insurance company, corporation, person or organization in the amount of such medical, surgical or hospital services so paid on behalf of such petitioner. [Emphasis supplied]
*400 Our Supreme Court has taken notice of the intention behind this legislation:
The introducer's statement attached to the bill clearly portrays the intent:
"The purpose of this supplement is to prevent an employer or its carrier [workmen's compensation insurance carrier] from reaping the benefit of having medical, surgical or hospital expenses, for which it is liable under the act, from being relieved thereof by reason of any hospitalization, insurance or other plan which petitioner may have carried personally and for which he paid the premium or dues * * *." Revised Statutes Cumulative Supplement, p. 918. (insertion ours).
[Hunt v. Hospital Service Plan of N.J., 33 N.J. 98 at 105 (1960)]
This is the same type of reasoning that provided the catalyst for the "collateral source" provision in the No Fault Act, N.J.S.A. 39:6A-6: a PIP carrier who has paid any benefits which a "collateral source" is responsible for paying is entitled to reimbursement, in its own right.
This reimbursement should not be limited to the payment of medical expenses (as was discussed in Hunt, supra) but should include the payment of income benefits as well. We hold that to the extent a PIP carrier discharges an employer's wage continuation obligation[2] by providing income continuation benefits pursuant to N.J.S.A. 39:6A-4b. the carrier must be reimbursed by the employer.
This court believes that the proper place for the PIP carrier's claim is before the Division of Workers' Compensation. Our compensation statute permits the deputy directors or referees "to incorporate in any award, order or approval of settlement, an order requiring the employer or his insurance carrier to reimburse such insurance company * * *" N.J.S.A. 34:15-15.1. In order to have an award or order there is the necessity for a petition in workmen's *401 compensation. The question remains, by whom should this petition be brought?
Given the insurer's right to a deduction for benefits collectible under compensation and the duty of employers to reimburse those who discharge their compensation obligations, this court holds that the PIP carrier must be permitted to initiate, in its own name, a petition in workmen's compensation to determine what amount, if any, is collectible from the "collateral source," i.e., the compensation carrier.
This resolution is equitable for all parties involved. The real party in interest  the PIP carrier  will prosecute the claim to the fullest. On the other hand, the injured insured will not suffer the hardships of delayed benefits caused by a PIP carrier's naked assertion that the injury was work-related.
For the above stated reasons, this court orders defendant Consolidated Mutual to immediately resume all N.J.S.A. 39:6A-4 benefits to plaintiff. Furthermore, we direct defendant to seek its redress before the Division of Workers' Compensation, which is the sole arbiter of the issue of compensability.
NOTES
[1] This court does not intend to express any opinion whatsoever on the question of whether or not this particular injury was work-related. That determination is within the exclusive province of the Division of Workers' Compensation pursuant to N.J.S.A. 34:15-49, and it would be inappropriate for this court to transgress thereon.
[2] The obligation of the employer arises out of the determination of compensability by a judge in the Division of Workers' Compensation.