158 N.J. Super. 574 (1978)
386 A.2d 908
ROSEMARIE BERNICK, PLAINTIFF,
v.
AETNA LIFE AND CASUALTY, DEFENDANT.
Superior Court of New Jersey, District Court Morris County.
April 7, 1978.
*576 Mr. Jack N. Frost for plaintiff.
Mr. John G. Tinker, Jr. for defendant (Messrs. Leary and D'Ambrosio, attorneys).
MACKENZIE, J.C.C. (temporarily assigned).
The sole issue in this case concerns the interrelationship between the personal injury protection benefits (PIP) provided in an automobile liability policy as required by the New Jersey Automobile Reform Act (No Fault Law), N.J.S.A. 39: *577 6A-1 et seq., and the medical expense benefits for work-related injuries under the Workers' Compensation Act, N.J.S.A. 34:15-1 et seq.
The facts are undisputed. Plaintiff Rosemarie Bernick, while operating an automobile owned by the Visiting Nurse Association of Plainfield (Association), suffered back and neck injuries when her car was struck from behind by a vehicle operated by Billy A. Snow. The accident occurred in Plainfield, New Jersey, on February 20, 1976 while Mrs. Bernick was in the course of her employment with the Association as a public health nurse. The Association held an automobile policy of insurance containing PIP benefits issued by Aetna Casualty and Surety Company (Aetna). The Association also had a workers' compensation policy issued by Aetna. Both policies insured plaintiff.
Plaintiff filed an employee's claim petition with the Division of Workers' Compensation. Aetna filed a timely answer to the claim petition. On August 4, 1977 an order for judgment was entered in the Workers' Compensation Division awarding Mrs. Bernick 4 1/2% of permanent disability, which amounted to $990. Under the compensation policy Aetna also paid Mrs. Bernick's medical expenses, which totalled $326.55. Aetna then asserted its compensation lien against Mrs. Bernick in the amount of $1,316.55. N.J.S.A. 34:15-29.
On October 5, 1976 Mrs. Bernick and her husband filed a negligence complaint in the Superior Court against Snow and his employer. The third-party action was settled between the parties on September 26, 1977 for $2,700. Honoring the carrier's lien, Mrs. Bernick repaid the full amount thereof, including the $326.55 medical expenses.
Immediately thereafter Mrs. Bernick applied in writing to Aetna for reimbursement of $326.55 under the terms of the PIP endorsement to the automobile insurance policy. On October 14, 1977 Aetna denied her claim. This action for first-party benefits followed.
*578 Cross-motions for summary judgment are now before the court. Plaintiff seeks judgment compelling defendant to reimburse the medical expenses from the PIP coverage. Defendant contends this action is barred as a matter of law by the "collateral source rule" of N.J.S.A. 39:6A-6. The case is ripe for summary disposition R. 4:46, as made applicable by R. 6:6-1; Judson v. Peoples Bank and Trust Co., 17 N.J. 67 (1954).
PIP medical expense benefits are payable to insured persons who suffer personal injuries under the No Fault Law. N.J.S.A. 39:6A-4(a). Aetna concedes that plaintiff's medical expenses were reasonable and necessary. The basis of Aetna's decision to deny PIP coverage was its reading of N.J.S.A. 39:6A-6.[1] The statute provides as follows:
The benefits provided in section 4a., b., c., d., and e. and section 10, [the basic and supplemental PIP benefits] shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits collectible under workmen's compensation insurance, employees temporary disability benefit statutes and medicare provided under Federal law, shall be deducted from the benefits collectible under section 4a., b., c., d., and e. and section 10.
The statutory scheme is that benefits collectible under workers' compensation are to be deducted from the benefits collectible under PIP. Plaintiff's argument is that she should be able to recover from her PIP carrier those workers' compensation benefits which she has reimbursed. This argument, while initially persuasive, falls in the face of the clear and mandatory language of the statute. The statute says that "collectible" workers compensation benefits "shall" be deducted from any PIP payments. The deduction *579 is mandatory ("shall").[2] The amount to be deducted is the amount of "benefits collectible" under workers' compensation, without regard to any reimbursement of the subsequent workers' compensation lien. "Benefits collectible" are the precise words used in the statute to describe the amount to be deducted from PIP. The statute does not say (as it presumably would if plaintiff's interpretation thereof were accepted) "unreimbursed benefits collectible." The court must assume that the Legislature was aware of the mechanics of the workers' compensation procedure when it drafted N.J.S.A. 39:6A-6. Therefore, if the Legislature had intended the result argued by plaintiff, it would have included language in the statute distinguishing between reimbursed and unreimbursed workers' compensation benefits. Such a distinction is conspicuously absent from the clear and express language of N.J.S.A. 39:6A-6.
The intention of N.J.S.A. 39:6A-6 is embodied in the language of the statute  specifically, that an injured party's recourse for medical expenses in a situation such as the present one is against the workers' compensation carrier only. The clear mandate of the statute would be frustrated if a plaintiff, by the circuitous route suggested, was permitted to recover workers' compensation benefits and PIP *580 benefits arising out of the same accident. Had the Legislature contemplated that PIP benefits would be payable in cases where compensation benefits had already been paid and reimbursed, then the three exceptions to the general rule of N.J.S.A. 39:6A-6 would be mere surplusage. One cannot perceive such a legislative intent. The word "shall" in the statute must be read as evincing an unflinching mandate and command. "Shall" cannot be construed as discretionary or precatory.
The overlap and interrelationship between workers' compensation and PIP benefits was analyzed when a similar question arose in Solimano v. Consolidated Mut. Ins. Co., 146 N.J. Super. 393 (Law Div. 1977). Given the policy of the No Fault Act of providing prompt reparation for all New Jersey accident victims, the court in Solimano held that the PIP carrier could not suspend PIP benefits pending a determination by the Division of Workers' Compensation as to whether the injury was compensable, but rather had a duty to pay under the policy. However, the court went on to explain that:
We read this provision [N.J.S.A. 39:6A-6] as providing a statutory right to a deduction that belongs to the PIP carrier * * *
We feel that this is the only logical interpretation that can be gleaned from the wording of the statute. If the Legislature intended otherwise, it would have provided some mechanism for the remittance of, or subrogation rights to, benefits received from these collateral sources. No mention of remittance or subrogation exists in N.J.S.A. 39:6A-6. [at 397-398]
While the court in Solimano did not deal specifically with the question presented in this case, the substance of its holding confirms the PIP carrier's right to the deduction specified in the statute. The right is so firmly embedded in the statutory scheme as to have induced the Solimano court to create a remedy in favor of the PIP carrier when PIP benefits are payable prior to a determination of collectibility under workers' compensation. The procedure suggested is for the PIP carrier to institute a compensation action in *581 its own name to obtain reimbursement. Solimano at 401. The right of deduction cannot be abrogated by the injured party's decision to file a third-party complaint and satisfy the compensation lien.
Toppi v. Prudential Ins. Co. of America, 153 N.J. Super. 445 (Cty. D. Ct. 1978), is inapposite but supports the Solimano analysis. The court therein held that the PIP carrier was barred from unilaterally making a deduction from its payments for amounts that it contended were collectible from one of the three enumerated collateral sources, i.e., temporary disability benefits. The PIP carrier should honor its obligation to pay PIP benefits where there has been no adjudication as to collectibility of collateral source benefits. Using the procedure outlined in Solimano the carrier could then apply in the name of the insured for temporary disability benefits from the Division of Unemployment Compensation. In the case at hand plaintiff's entitlement to compensation benefits has not only been adjudicated by the Workers' Compensation Division, but that determination was recognized and acknowledged by her act of reimbursing the compensation lien. Collectibility of workers' compensation benefits was therefore conclusively established here.
Mrs. Bernick's claim for PIP benefits is not only diametrically opposed to the provisions of N.J.S.A. 39:6A-6 and the decisional authority but it is also an attempt to recover twice for the same medical expenses where such double recovery is statutorily precluded. Plaintiff has already recovered her medical expenses from the compensation carrier and again from the third-party driver in the civil action. She is whole despite payment of the compensation lien which included the medical expenses. Having been fully compensated for her injuries and expenses, plaintiff has not suffered any damage from this accident for which she has not already been reimbursed. To allow her PIP benefits on top of the payments received so far would constitute a double recovery of her medical expenses. While a plaintiff is entitled to full and adequate recovery for her damages, *582 she is not entitled to the windfall of double recovery of her medical expenses. Cf. Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380 (1977).
Plaintiff argues that she would have been barred by N.J.S.A. 39:6A-12 from collecting from the third party in the negligence action the medical benefits paid by her workers' compensation insurance. The statute provides:
Evidence of the amounts collectible or paid pursuant to sections 4 and 10 of this act to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
The intent of this provision is to preclude the possibility of double recovery for medical expenses already paid under PIP in a subsequent civil action. Plaintiff ignores the references to N.J.S.A. 39:6A-4 and 39:6A-10 benefits. These sections of the No Fault Act refer to basic PIP and supplemental PIP benefits only. N.J.S.A. 39:6A-12 creates no evidential exclusion in a civil action of medical expenses paid by the compensation carrier.
The No Fault Act does allow in limited instances for a duplication of payment for medical expenses, as for instance where the injured party's own personal hospitalization policy provides medical expense benefits similar to those required by the statute. See, Iavicoli, No Fault and Comparative Negligence in New Jersey, § 13 at 44-45 (1973).
Plaintiff has provided no decisional authority in support of her position. Lapidula v. Government Employees Ins. Co., 146 N.J. Super. 463 (App. Div. 1977), held that medical services provided by the Government to military service personnel were medical expenses "incurred" under the No Fault Law. However, the medical services received by plaintiff in Lapidula did not constitute a collateral source as enumerated in N.J.S.A. 39:6A-6. Therefore, applying the general rule, these expenses were collectible under PIP despite the apparent "double recovery." The key factor in Lapidula was that the collateral source (the medical services) *583 did not fall into one of the three enumerated exceptions of N.J.S.A. 39:6A-6.
Lapidula was at least impliedly overturned on the question of when medical expenses are "incurred" by Sanner v. Government Employees Ins. Co., 150 N.J. Super. 488 (App. Div. 1977), aff'd o.b. 75 N.J. 460 (1978). However, the Sanner court concluded (at 492) that the apparent basis for the requirement that medical expenses be "incurred" before PIP benefits become payable can be "found in legislative efforts to avoid double recovery for such expenses * * *".
The conclusion that N.J.S.A. 39:6A-6 should be interpreted in a plain meaning sense is strengthened, not undermined, by the holding in Walkowitz v. Royal Globe Ins. Co., 149 N.J. Super. 442 (App. Div. 1977). There the court held void as contrary to public policy a provision of an uninsured motorist endorsement requiring a direct reduction of the amount payable for bodily injury by the amount of any workers' compensation award.
Walkowitz is clearly distinguishable because it turned on the issue of liability coverage, not first-party medical expense coverage through PIP. The Appellate Division found a clear mandate in N.J.S.A. 17:28-1.1 et seq. to require carriers to provide uninsured motorist coverage without reduction by workers' compensation benefits. The crux of the holding was the statute itself. That statute contained no provision for relief from the obligation to pay liability benefits merely because workers' compensation coverage was also available to the injured party.
Here the plain meaning and clear intent of the No Fault Act is to require prompt payment of first-party medical expenses, except that benefits collectible under workers' compensation insurance, employees temporary disability benefit statutes and Medicare are to be deducted from the PIP benefits. There is no statutory or case law "exception to the exception" for the situation where an injured plaintiff reimburses a workers' compensation lien from the proceeds *584 of a third-party settlement. Where there are collectible benefits under any of the three collateral sources expressly enumerated by N.J.S.A. 39:6A-6, recovery of PIP benefits is precluded.
For the foregoing reasons, summary judgment is entered in favor of defendant dismissing the complaint.
NOTES
[1] The validity of this section of the No Fault Law was upheld against procedural and substantive due process arguments. Frazier v. Liberty Mut. Ins. Co., 150 N.J. Super. 123 (Law Div. 1977).
[2] In reviewing N.J.S.A. 39:6A-6 the language which includes the word "shall" clearly appears to be mandatory insofar as it exempts recipients of three collateral source benefits from PIP benefits. As pointed out in Taureck v. Jersey City, 149 N.J. Super. 503 (Law Div. 1977) whether statutory language is mandatory or directory is a question of legislative intent:

Where the language of a statute is clear and unambiguous, courts may hold that the construction intended by the Legislature is obvious from the language used. Although the form of the verb in the statute, e.g. "may," "shall," "must," is the most significant consideration bearing on whether a statute is mandatory or directive, it is not conclusive. Where the word "shall" is used in a statute the presumption is that its use is imperative and not merely directory, unless the character of the legislation or the context justifies a different meaning. Ervolini v. Camden Cty., 127 N.J.L. 473 (Sup. Ct. 1941). [at 513]