STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY *v.* INSURANCE COMMISSIONER
OF THE STATE OF MARYLAND

[No. 156, September Term, 1977.]

*Decided November 2, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ▌LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Thomas J. Wohlgemuth,* with whom were *Smith & Wohlgemuth* and *Joseph A. Schwartz, III,* on the brief, for appellant.

*Richard J. Brooks, Assistant Attorney General,* with whom was *Francis Bill Burch, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

Maryland Code (1957, 1972 Repl. Vol., 1978 Cum. Supp.), Art. 48A, § 539, provides that every motor vehicle liability insurance policy issued, sold or delivered in Maryland after

January 1, 1973, afford a minimum of $2,500.00 medical, hospital, disability and loss of income benefits covering the named insured and other specified categories of persons injured in an accident. These benefits, commonly referred to as "Economic Loss" or "Personal Injury Protection" or "PIP" benefits, are under § 540 payable without regard to the fault or non-fault of the insured or the recipient in causing or contributing to the accident. Section 543 (d) of Art. 48A mandates that the PIP benefits "shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government." [1] The substantive issue in this case involves an interpretation of this offset provision contained in § 543 (d). In addition, two procedural questions are presented by the petitioner.

The facts underlying this controversy are undisputed. Patrick Morris was employed on July 31, 1974, by the Washington Gas Light Company. While driving his own automobile in the course of his employment, Morris's vehicle was struck in the rear. Consequently, he sought and recovered workmen's compensation benefits in the amount of $379.50 from his employer's insurance carrier. Subsequently, Morris pursued a tort claim against the negligent third party, and this resulted in a settlement. Out of the settlement proceeds, Morris reimbursed $379.50 to the workmen's compensation insurance carrier, as required by Code (1957, 1964 Repl. Vol., 1978 Cum. Supp.), Art. 101, § 58. Morris then filed a claim for PIP benefits in the amount of $1,119.28 against his own automobile insurance carrier, State Farm Mutual Automobile Insurance Company. State Farm paid only $739.78, maintaining that under § 543 (d) of Art. 48A, the $1,119.28 PIP benefits should be reduced by the $379.50 workmen's compensation benefits which Morris received.

Morris filed a protest with the Insurance Commissioner, arguing that since he paid back to his employer's workmen's

---

1. For more detailed discussions of these sections, and of the required PIP benefits, see this Court's opinions in Travelers Ins. Co. v. Benton, 278 Md. 542, 365 A. 2d 1000 (1976), and Government Employees Ins. v. Harvey, 278 Md. 548, 366 A. 2d 13 (1976).

compensation carrier $379.50 out of the proceeds of the settlement with the tortfeasor, he had not "recovered" workmen's compensation benefits within the meaning of § 543 (d). A hearing on the protest was held on August 26, 1975, attended by Morris and his attorney as well as by a representative of State Farm and its attorney. More than thirteen months later, on October 5, 1976, the Insurance Commissioner rendered a decision, holding that Morris's receipt of the $379.50 workmen's compensation benefits was "only a technical, and not a true receipt, a [receipt] in name only, and certainly does not fall within the purview of the Statute as monies 'recovered.'" The Commissioner ordered State Farm to pay Morris $379.50 plus interest.

As authorized by and in accordance with Art. 48A, § 40, and Maryland Rule B2, State Farm appealed the Commissioner's decision to the Baltimore City Court. State Farm served copies of its order for appeal and its petition under Rule B2 e upon the attorney for Morris. In addition, the Insurance Commissioner's office sent to Morris's attorney a "Certificate of Compliance With Maryland Rule B2 d," notifying him of the appeal. Subsequently, a copy of the certificate of the Insurance Commissioner, certifying the contents of the administrative record, as provided for by Art. 48A, § 40 (3), was served upon Morris's attorney. And a copy of the Insurance Commissioner's answer to State Farm's petition was served upon Morris's attorney. Nevertheless, neither Morris nor his attorney appeared before the Baltimore City Court.

State Farm's petition in the Baltimore City Court challenged the Insurance Commissioner's order on essentially two grounds. First, it asserted that the Commissioner's order was void because § 39 (1) of Art. 48A states that "[w]ithin thirty (30) days after termination of the hearing ..., [the Commissioner] shall make his order ...," and the Commissioner took more than thirteen months to render his order in this case. Second, State Farm contended that the administrative decision was contrary to the provision in § 543 (d) requiring that PIP benefits be reduced to the extent that workmen's compensation benefits have been recovered.

The Baltimore City Court affirmed the Insurance Commissioner's order. Regarding the thirty day requirement of Art. 48A, § 39 (1), the court stated in its oral opinion that despite the use of the word "shall," the provision is "directory only" and, in any event, no prejudice had been shown by the delay. The court went on to agree with the Commissioner's interpretation of § 543 (d), holding that the offset provision applies "only where Workmen's Compensation benefits are awarded and received and are not repaid."

State Farm then appealed to the Court of Special Appeals, raising the same two grounds for overturning the Insurance Commissioner's order. After briefs were filed and after oral argument, the Court of Special Appeals sua sponte dismissed the appeal, saying:

> "We observe that the order for appeal does not include Mr. Morris as an appellee nor was service of the order for appeal made upon Morris pursuant to Md. Rule 1011 a. The appeal is patently defective because of the want of a necessary party, Mr. Morris."

This Court granted State Farm's petition for a writ of certiorari, believing that the dismissal of the appeal presented an important issue of appellate practice in administrative law cases. We shall hold that the Court of Special Appeals erroneously dismissed the appeal. Since the parties have also briefed and argued the insurance law issues raised by State Farm, and as these matters involve novel questions of statutory interpretation in this State, we shall also deal with the merits of State Farm's appeal instead of remanding the case for such purpose to the Court of Special Appeals.

(1)

Rule 1011 a, upon which the Court of Special Appeals relied in dismissing State Farm's appeal, requires that the party appealing to the Court of Special Appeals serve a copy of the order of appeal upon each other *party* to the lower court proceeding or upon his attorney. However, it is clear that Morris, by failing to appear before the Baltimore City Court

after having been properly notified of the pendency of the appeal on several separate occasions, lost his status as a "party." Therefore, under Rule 1011 a, State Farm was not obliged to serve Morris or his attorney with a copy of the order of appeal to the Court of Special Appeals.

Morris was clearly a "party" to the administrative proceedings, and, under Rule B2 d, the agency (*i.e.,* Insurance Commissioner's office) was required to notify Morris or his attorney of the filing of the appeal to the Baltimore City Court. *Morris v. Howard Res. & Dev. Corp.,* 278 Md. 417, 365 A. 2d 34 (1976). In the instant case, Morris's attorney was properly notified by the Insurance Commissioner's office.

If Morris desired to continue his status as a party, and to participate in the Baltimore City Court judicial review proceeding as a party, he was required to file a demurrer or an answer within thirty days after the filing of State Farm's petition. This is clearly mandated by Rule B9:

> "A party to the proceeding before the agency, or to whom the agency is required by law to give notice of the action appealed from, *who desires to participate in the appeal as a party,* . . . shall file with the clerk of the court, within thirty days after the filing of the petition of appeal, or such longer or shorter time as may be fixed by the Court, a demurrer, or an answer admitting or denying a fact alleged in such petition and asserting briefly such defense as he or it may see fit, or other appropriate pleading. . . ." (Emphasis supplied.)

As we recently stated in the *Howard Res. & Dev. Corp.* case, 278 Md. at 423, one who has the status of a party at the administrative level, and is thus entitled to notice of the judicial review proceeding, "abandons this status by failing to file in the . . . court an answer or other permissible pleading as directed by Rule B9. . . ." Morris, by failing to file an answer or other pleading in the Baltimore City Court, abandoned his status as a party to the judicial review proceeding. Consequently, there was no requirement that he

be served with a copy of the order of appeal to the Court of Special Appeals.

This conclusion, as to insurance appeals specifically, is confirmed by the language of the Insurance Code. Article 48A, § 40 (1), provides in pertinent part (emphasis supplied):

> "An appeal from the Commissioner shall be taken only from an order or hearing or with respect to a matter which the Commissioner has refused a hearing. Any person who was a party to such hearing, or whose pecuniary interests are directly and immediately affected by any such order or refusal and who is aggrieved thereby may, within 30 days . . . appeal from such order or hearing or such refusal of a hearing. The appeal shall be taken to the Baltimore City Court, by filing written notice of appeal in such court and by filing a copy of such notice with the Commissioner. . . . An appeal taken pursuant to this subsection shall be captioned in the name of the person filing the appeal, as the party appellant, versus the Insurance Commissioner of the State of Maryland, as the party appellee. *In all such appeals, the Commissioner shall be a necessary party appellee.* In addition to the person filing the appeal and the Commissioner, *any other person* whose pecuniary interests are or may be directly and immediately affected by the matter on appeal, or who may be aggrieved thereby, *upon application to the court, may be deemed an additional party* appellant or appellee, as the court directs."

This provision clearly refutes the holding of the Court of Special Appeals that Morris was "a necessary party" entitled to service of the order of appeal to the Court of Special Appeals. Under the language of § 40 (1), the Insurance Commissioner was the only *necessary* party to the proceeding in the Baltimore City Court. Morris, if he desired to continue to participate as a party in the Baltimore City Court, had to take some affirmative action after receiving notice. This was required by Art. 48A, § 40 (1), as well as by Rule B9.

670

(2)

Moving to the merits of State Farm's appeal, we believe that the interpretation of Art. 48A, § 543 (d), by the Baltimore City Court and the Insurance Commissioner was erroneous.

The principles of statutory construction applicable to this case were recently summarized by Judge Orth for the Court in *Wheeler v. State,* 281 Md. 593, 596-597, 380 A. 2d 1052 (1977):

> "The cardinal rule of statutory construction is to ascertain and carry out the real legislative intention. *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 31, 358 A. 2d 241 (1976). A statute should be construed according to the ordinary and natural import of the language used without resorting to subtle or forced interpretations for the purpose of limiting or extending its operation. *Burch v. State,* 278 Md. 426, 429, 365 A. 2d 577 (1976); *Cearfoss v. State,* 42 Md. 403, 407 (1875). That is, we must confine ourselves to the statute as written, and may not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute. *In Re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A. 2d 556 (1976). Thus, if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the Legislature. *Maryland Auto Ins. Fund v. Stith,* 277 Md. 595, 597, 356 A. 2d 272 (1976). As we said in *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 66, 327 A. 2d 483 (1974), 'where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning.' "

*Accord, Condominium Owners v. Supervisor,* 283 Md. 29, 32, 388 A. 2d 116 (1978); *Gietka v. County Executive,* 283 Md. 24,

27, 387 A. 2d 291 (1978); *White v. Prince George's Co.,* 282 Md. 641, 659, 387 A. 2d 260 (1978); *Coleman v. State,* 281 Md. 538, 546-547, 380 A. 2d 49 (1977); *Schweitzer v. Brewer,* 280 Md. 430, 440, 374 A. 2d 347 (1977); *Blue Cross v. Franklin Sq. Hosp.,* 277 Md. 93, 105, 352 A. 2d 798 (1976); *Slate v. Zitomer,* 275 Md. 534, 539-540, 341 A. 2d 789 (1975), *cert. denied sub nom Gasperich v. Church,* 423 U. S. 1076, 96 S. Ct. 862, 47 L.Ed.2d 87 (1976); *St. Paul Fire & Mar. v. Ins. Comm'r,* 275 Md. 130, 139, 339 A. 2d 291 (1975). In the instant case, the language of Art. 48A, § 543 (d), is plain and unambiguous. It requires State Farm to reduce the PIP benefits payable to Morris by the $379.50 workmen's compensation benefits which Morris received.

Section 543 (d) provides as follows (emphasis supplied):

> "Benefits payable under the coverages required in §§ 539 and 541 of this article shall be reduced to the extent that the recipient *has recovered* benefits under workmen's compensation laws of any state or the federal government." [2]

The critical words in the statute are "has recovered." The general meaning in law of the verb "to recover" is "to get," "to obtain," "to come into possession of," "to receive." *Garza v. Chicago Health Clubs, Inc.,* 347 F. Supp. 955, 962 (N.D. Ill. 1972); *Covert v. Randles,* 53 Ariz. 225, 231, 87 P. 2d 488, 490 (1939); *Swader v. Flour Mills Co.,* 103 Kan. 703, 704, 176 P. 143, 144-145 (1918); *Black's Law Dictionary,* p. 1440 (rev. 4th ed. 1968); *Webster's New International Dictionary of the English Language,* p. 2081 (2d ed. unabridged, 1961). In a narrower sense, "to recover" means "to succeed in a [legal] proceeding," *Webster's New International Dictionary of the English Language, supra,* or "to obtain in any legal manner in contrast to voluntary payment," *Black's Law*

---

2. The automobile insurance policy issued by State Farm to Morris contains a clause providing for the reduction of PIP benefits if workmen's compensation benefits had been "received" for the same items of loss and expense. Because the clause in the policy is in substance the same as § 543 (d), and because in any event the mandatory provision of the statute would control, Peninsula Insurance v. Houser, 248 Md. 714, 721, 238 A. 2d 95 (1968), we have in this opinion focused upon the statute rather than the policy.

*Dictionary, supra. See also Union Petroleum S.S. Co. v. United States,* 18 F. 2d 752, 753 (2d Cir. 1927), *cert. denied,* 274 U. S. 760, 47 S. Ct. 770, 71 L. Ed. 1338 (1927); *Garza v. Chicago Health Clubs, Inc., supra,* 347 F. Supp. at 962; *Covert v. Randles, supra,* 53 Ariz. at 231. Under either the general meaning of the word or the more narrow meaning, Mr. Morris, the insured, "recovered" workmen's compensation benefits when he received $379.50 from his employer's insurance carrier as a result of his claim under the workmen's compensation law.

The Insurance Commissioner's theory is that a claimant, who has in fact obtained certain monetary benefits, has nevertheless failed to "recover" those benefits if he must later, out of different proceeds covering the same loss, repay an equivalent sum of money. The accepted definition of the verb "recover" simply does not support this concept. Interpreting § 543 (d) in such a manner would be ignoring the plain language of the statute and "resorting to subtle or forced interpretations for the purpose of . . . limiting . . . its operation." *Wheeler v. State, supra,* 281 Md. at 596.

A recent New Jersey case, involving a similar factual situation and interpreting an almost identical statutory scheme, has reached the same result, relying on the "plain meaning" of the statutory language. In *Bernick v. Aetna Life and Cas.,* 158 N.J. Super. 574, 386 A. 2d 908 (1978), the plaintiff was injured in an automobile accident while acting in the course of her employment. She filed a workmen's compensation claim and received payment. Subsequently, the plaintiff settled a tort claim with the negligent third party. As mandated by state law, she paid to the workmen's compensation carrier, out of the settlement proceeds, an amount equal to the benefits previously received. The plaintiff thereafter filed a claim for PIP benefits, in an amount equal to the workmen's compensation benefits, pursuant to an automobile insurance policy issued to her employer by the Aetna Life and Casualty Company. The insurer denied coverage, relying on N.J.S.A. 39:6A-6, which provides: "The [PIP] benefits ... shall be payable as loss accrues ..., except that benefits collectible under work-

men's compensation insurance ... shall be deducted from the benefits collectible under ... [the PIP coverage]." As in the case at bar, the plaintiff argued that she should be able to recover the PIP benefits since she had previously repaid the workmen's compensation carrier. In rejecting this argument, the New Jersey court declared (386 A. 2d at 910-911):

> "The statute says that 'collectible' worker's compensation benefits 'shall' be deducted from any PIP payments. The deduction is mandatory (shall). The amount to be deducted is the amount of 'benefits collectible' under worker's compensation, without regard to any reimbursement of the subsequent worker's compensation lien. 'Benefits collectible' are the precise words used in the statute to describe the amount to be deducted from PIP. The statute does not say (as it presumably would if plaintiff's interpretation thereof were accepted) 'unreimbursed benefits collectible'. . . . Therefore, if the Legislature had intended the result argued by plaintiff, it would have included language in the statute distinguishing between reimbursed and unreimbursed worker's compensation benefits. Such a distinction is conspicuously absent from the clear and express language of ... [the statute]."

The Appellate Court of Illinois in *Niekamp v. Allstate Insurance Company,* 52 Ill.App.2d 364, 202 N.E.2d 126 (1964), used similar reasoning in a related insurance context. In that case, the plaintiff's own automobile liability insurance policy included uninsured motorist coverage up to $10,000.00. The plaintiff was injured in an accident allegedly caused by the negligence of two other motorists, one of whom was insured and one of whom was uninsured. The plaintiff received more than $10,000.00 in workmen's compensation payments from his employer as a result of the accident. Subsequently he was offered $17,500.00 in settlement of his claim against the insured third party tortfeasor. Under state law, any recovery obtained by the plaintiff from third parties would have to be used to reimburse the workmen's compensation carrier. In

addition, the plaintiff made a claim against his own insurer under the uninsured motorist provision of his policy. His insurer refused to pay on the ground that the policy called for an offset of the carrier's uninsured motorist liability to the extent of "all amounts payable to him under any Workmen's Compensation law." The plaintiff, in a declaratory judgment action against his insurer, argued to the court that this provision does not apply, since an amount equal to the workmen's compensation benefits received would ultimately have to be repaid to the workmen's compensation carrier out of the settlement proceeds. In rejecting this argument and finding in favor of the insurer, the Illinois court stated (202 N.E.2d at 128):

> "The absence of language about repayment of such benefits does not create an ambiguity, nor does it create an opportunity for 'the exercise of inventive powers for the creation of an ambiguity where none exists.' . . . Plaintiff would have this court construe the word 'paid' in the limitation of liability provision as meaning 'paid and retained.' The word 'paid' is used unequivocally and without qualification. This unqualified term must be used in its 'plain, ordinary and popular sense' here."

State Farm's position in the present case, in addition to being supported by the clear statutory language and the reported decisions, is also confirmed by the legislative purpose underlying Art. 48A, § 543 (d). Section 543 in its entirety was enacted as part of a comprehensive statute relating to many aspects of motor vehicle insurance and reparations for damages suffered in motor vehicle accidents, Ch. 73 of the Acts of 1972. One of the many purposes of that statute, as expressed in its title, was providing "direct first party coverage for certain types and amounts of economic loss; [and] prohibiting the duplication of benefits. . . ." [3]

---

3. The title of an act is relevant in ascertaining the legislative intent and purpose. St. Comm'n On Human Rel. v. Baltimore, 280 Md. 35, 41 371 A. 2d 645 (1977); City of Gaithersburg v. Mont. Co., 271 Md. 505, 513, 318 A. 2d 509 (1974); MTA v. Balto. Co. Revenue Auth., 267 Md. 687, 695-696, 298 A. 2d 413 (1973).

Section 543, entitled "Duplication of benefits; coordination of policies," [4] was one of those parts of the Act designed to carry out the legislative purpose of prohibiting the duplication of benefits. The subsections of § 543 restrict the duplication of insurance benefits in several respects, one of which in subsection (d) is the reduction of PIP benefits to the extent that the claimant recovered workmen's compensation benefits. It would be inconsistent with the legislative purpose of generally prohibiting the duplication of benefits for us to adopt the Insurance Commissioner's interpretation of § 543 (d). At the time the insured, Mr. Morris, made his claim for PIP benefits, he had already been made whole for the same economic loss. He first recovered the $379.50 workmen's compensation benefits, retained the money and presumably used it. Morris later received settlement proceeds from the third party tortfeasor or his liability insurance carrier covering, among other things, the same economic loss for which he had received workmen's compensation benefits. When he repaid $379.50 out of these settlement proceeds, as required by the workmen's compensation law, this prevented a duplication of benefits. Nevertheless, after the repayment, he had still been fully compensated once for the economic loss. For him to then receive PIP benefits for the same loss in the amount of $379.50 would clearly constitute a duplication of benefits in violation of the general legislative purpose reflected in § 543.

In sum, State Farm was required by Art. 48A, § 543 (d), to reduce the PIP benefits payable to Mr. Morris by the amount of the workmen's compensation benefits which he had received. In light of our holding on this issue, it is unnecessary for us to reach the alternate ground for reversal urged by State Farm, namely the contention that the

---

4. This heading is not merely a caption inserted by the codifier, *see* Code (1957, 1976 Repl. Vol.), Art. 1, § 18, but was in the Act itself, Ch. 73 of the Acts of 1972, p. 308.

Insurance Commissioner's order was void because it was not rendered within thirty days.

*Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to reverse the judgment of the Baltimore City Court.*
*Respondent to pay costs.*