199 N.J. Super. 191 (1985)
488 A.2d 1071
TINA OLIVERO, BY HER PARENT AND GUARDIAN AD LITEM, MARGARET OLIVERO, AND MARGARET OLIVERO, INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1985.
Decided March 5, 1985.
*193 Before Judges KING, DEIGHAN and BILDER.
Darrell Fineman argued the cause for appellant (Capizola & Fineman, attorneys; Darrell Fineman, on the brief).
J. Robert McGroarty argued the cause for respondent New Jersey Manufacturers Insurance Company.
Michael Huber argued the cause for respondent Liberty Mutual Insurance Company (Freeman & Barton, attorneys; Michael Huber, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
This matter is a classic example of the precise situation that the Legislature intended to avoid when it enacted the New Jersey Automobile Reparation Reform Act (No-Fault), N.J.S.A. 39:6A-1, et seq. to provide payment for benefits for automobile accident victims. The Act requires that personal injury protection benefits (PIP) under an automobile liability policy shall be payable as the loss accrues; it permits the PIP carrier to receive reimbursement for collectible workers' compensation benefits. Plaintiffs are fortunate in having dual coverage for benefits under both PIP and workers' compensation. Unfortunately, Liberty Mutual Insurance Company (Liberty Mutual), the workers' compensation (workers' comp) carrier who has undertaken *194 to pay considerable benefits, has now refused to pay certain bills for tutoring, rehabilitation, physical therapy and other expenses. Plaintiffs then turned to New Jersey Manufacturers Insurance Company (NJM) for PIP benefits which it declined, for the most part, to pay.
Plaintiffs instituted the present suit in the Superior Court, Law Division to determine their rights. The complaint was dismissed on application of both insurance carriers. NJM contends that the Superior Court, Law Division has no jurisdiction over the matter and that exclusive jurisdiction is vested in the Workers' Compensation Court. In the meantime, because the carriers cannot agree and plaintiffs' motion in the Workers' Compensation Court for relief filed in July 1984 has yet to be heard, plaintiffs have been denied certain benefits from either or both insurance carriers. In addition to seeking PIP benefits from NJM, plaintiffs sought to compel Liberty Mutual to pay outstanding medical and related expenses pursuant to an order of the Workers' Compensation Court entered July 16, 1981.
The trial judge dismissed the complaint as to Liberty Mutual on the ground that the Division of Workers' Compensation has exclusive jurisdiction and plaintiffs' remedy is through that Court. He also held that, insofar as PIP coverage by NJM, the factual matter is analogous to that in New Jersey Manufacturers Ins. Co. v. Blau, 194 N.J. Super. 27 (App.Div. 1984), and therefore dismissed the complaint. This appeal followed. We agree with the dismissal of the complaint as to Liberty Mutual but reverse the dismissal as to the PIP carrier, NJM.
After filing of a notice of appeal, on September 17, 1984, plaintiffs moved for acceleration of the appeal as an emergent matter. Because of the exigencies of the case we considered this as an emergent matter and a hearing was held as a result of which on October 26, 1984 an order was entered accelerating the appeal, establishing a briefing schedule and requesting the clerk to calendar the case as soon as possible.
*195 On April 21, 1981, plaintiff, Tina Olivero, then 12 years of age, was seriously injured when she was struck by an automobile while riding her bicycle and delivering papers for the Vineland Times Journal. As a result of head injuries she suffered from quadriparesis with ambulation, coordination and speech dysfunction. Her learning ability and memory retention has also been seriously impaired. Extensive surgery, treatment and therapy designed to minimize the effects of the injury have continued over the years since the accident and continue to the present time.
On May 11, 1981, a workers' compensation petition was filed by Tina. The compensation carrier for Vineland Times Journal is Liberty Mutual. On July 16, 1981 Liberty Mutual was directed to
supply to the petitioner all reasonable and necessary medical care necessary for her to recover from her injury suffered on April 21, 1981.
Liberty Mutual was also directed to pay the minimum temporary disability payments of $53.07 per week (Tina earned $29 per week for six and one-half hours work). As of July 17, 1984 Liberty Mutual paid a total of $157,356.58 in medical benefits alone and temporary disability payments continue.
Tina has been admitted to and treated at the Children's Hospital of Philadelphia on several occasions. She has also been admitted on numerous occasions to Children's Seashore House in Atlantic City for surgery and rehabilitative treatment. Her treatments continue. In June 1984 Tina had surgery to correct the spastic condition of her toes and foot. During July and August 1984 she was an in-house patient at Children's Seashore House and received occupational and speech-language therapy. The discharge summaries from Children's Seashore House state that physical, occupational and speech therapy are to be continued at home and at Newcomb Hospital.
Tina continues treatments recommended by Dr. Gregg at Children's Hospital in Philadelphia. These treatments include tutoring, and the construction of special study, exercise, and access areas in the home.
*196 On September 27, 1983, Liberty Mutual sent letters to all doctors and hospitals treating Tina advising that in the future previous authorization from Liberty Mutual would be required in order to obtain payment from them for treatment rendered to Tina. At the same time Liberty Mutual informed Tina's attorney that authorization was to preclude any unnecessary or unauthorized treatment.
Plaintiff, Margaret Olivero, was informed by Children's Hospital that Liberty Mutual was not cooperating in the payment of bills and sending insurance funds. In addition she was made aware of delays in payments of other services for considerable lengths of time. Thereafter, Dr. Gregg, along with Children's and Newcomb Hospital, began billing Mrs. Olivero directly because they were unable to obtain payment from Liberty Mutual.
In February 1984, Liberty Mutual was informed that home therapy and physical therapy were recommended. Supporting documentation and potential expenses were sent to Liberty Mutual. Mrs. Olivero incurred bills for private tutoring, remodeling of the home and physical therapy at a health club. Liberty Mutual declined to pay the therapeutic expenses and reportedly continued to be uncooperative in the payment of hospital bills. In July 1984, plaintiff filed a motion in the Workers' Compensation Court to compel Liberty Mutual to pay medical expenses. Liberty Mutual made a motion, as it had unsuccessfully attempted on previous occasions, to terminate temporary disability benefits. A hearing on these motions has never been held.
In view of the difficulty she was having in obtaining funds necessary for the proper treatment of Tina, Mrs. Olivero sought benefits from NJM, her automobile insurance carrier. NJM refused any payment contending that Liberty Mutual was responsible. The exigency of continued treatment and the limited financial sources of Mrs. Olivero creates an urgent situation. NJM, after admitting liability for essential service benefits, denied any additional liability and declined a request for payment *197 for in-patient services for Tina at Children's Seashore House.
The purpose of our No-Fault Act is to afford reparation or at least partial reparation for the objectively probable economic losses resulting from automobile accidents. The Act requires prompt payment for medical expenses, lost wages, essential services, survivor benefits and funeral expenses to certain classes of persons injured in an automobile accident without regard to negligence, liability or fault and without having to await the outcome of protracted litigation. N.J.S.A. 39:6A-4, 5. Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 480 (App.Div. 1976); Solimano v. Consolidated Mutual Ins. Co., 146 N.J. Super. 393, 397 (Law Div. 1977); see State of New Jersey Automobile Insurance Study Commission Report to the Governor and Legislature, Reparation Reform for New Jersey Motorists, xii (1971).
N.J.S.A. 39:6A-6 states:
Collateral source
The benefits provided in section 4 and section 10 shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits, collectible under workmen's workers' compensation insurance, employees; temporary disability benefit statutes, medicare provided under Federal law, and benefits, in fact collected, that are provided under Federal law to active and retired military personnel shall be deducted from the benefits collectible under section 4 and section 10.
If an insurer has paid those benefits and the insured is entitled to, but has failed to apply for, workers' compensation benefits or employees' temporary disability benefits, the insurer may immediately apply to the provider of workers' compensation benefits of or employees' temporary disability benefits, for a reimbursement of any section 4 and section 10 benefits it has paid.
The problem involved in the present case is the overlap of benefits due from the PIP carrier, NJM, and the workers' comp carrier, Liberty Mutual, and the means to accommodate the coverages between the No-Fault Act and the Workers' Compensation Act. The Legislature and the courts have directed a liberal construction to effect the beneficial purposes of both the no-fault law and the workers' compensation law. See Paul v. Ohio Cas. Ins. Co., 196 N.J. Super. 286, 296-97 (App.Div. 1984) and cases cited therein.
*198 The PIP carrier is required under the No-Fault Act to pay all benefits when due. N.J.S.A. 39:6A-5 and 6; Aetna Cas. & Sur. Co. v. Para Mfg. Co., 176 N.J. Super. 532, 535 (App.Div. 1980); Solimano, supra, 146 N.J. Super. at 396-397.
The priority of responsibility falls upon the no-fault insurer, Lindsey v. Hartford Accident & Indem. Co., 90 Mich. App. 668, 282 N.W.2d 440 (1979), and even if workers' compensation benefits are available to an insured, the insured's PIP benefits under an automobile liability policy are still primary. Kovarnik v. Royal Globe Ins. Co., 363 So.2d 166 (Fla.App. 1978). Workers' comp is the ultimate source of recovery for benefits of employees injured in compensable automobile accidents. Wagner v. Transamerica Ins. Co., 167 N.J. Super. 25, 34 (App.Div. 1979), certif. den. 81 N.J. 60 (1979).
The interplay between the Workers' Compensation Act and N.J.S.A. 39:6A-6 under the No-Fault Act was first touched upon in Solimano, supra, which interpreted the pertinent sections of the No-Fault Act to mean that an insured should not be required to resort to protracted workers' compensation proceedings in order to obtain medical benefits collectible from the no-fault carrier. Solimano held that the insured was entitled to payment of PIP benefits but the PIP carrier, to enforce its statutory right to a reimbursement for workmens' compensation benefits, was entitled to recover from the comp carrier or employer for medical payments or any other benefits determined to be compensable. Solimano further held that the PIP carrier was entitled to initiate in its own name a petition in the Workers' Compensation Court to determine the amount, if any, collectible from the comp carrier. Id. 146 N.J. Super. at 397-398. Thus, Solimano was the precursor of the last paragraph of N.J.S.A. 39:6A-6 which was added in 1983 pursuant to L. 1983, c. 362 § 9, effective October 4, 1983.
Solimano was cited with approval in Aetna Cas. & Sur. Co. v. Para Mfg. Co., supra. Unquestionably, since she is a resident and relative in her mother's home, Tina's injuries are covered under Mrs. Olivero's automobile liability policy with *199 NJM. Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444 (App.Div. 1981); Hoglin v. Nationwide Ins. Co., supra. The only difference in the present proceedings and those in Solimano and Aetna is that in the present case the workers' comp proceeding has already been instituted and a considerable sum has already been paid by Liberty Mutual, the workers' comp carrier. The full PIP benefits must be paid when due and if NJM pays any workers' comp obligations it has its right over against Liberty Mutual in the workers' comp proceedings. This procedure was generally approved and applied also to employees temporary disability benefits in Frazier v. Liberty Mutual Ins. Co., 150 N.J. Super. 123, 146 (Law Div. 1977), and Toppi v. Prudential Ins. Co. of America, 153 N.J. Super. 445, 450-451 (Cty.D.Ct. 1977).
To the extent that Tina has a right to workers' comp, NJM has a derivative right to pursue Liberty Mutual, see Aetna 176 N.J. Super. at 536 which had its genesis in legal and equitable principles underlying the doctrine of subrogation, id. at 536, but now also has the imprimatur of N.J.S.A. 39:6A-6.
The trial judge declined to apply the rationale in Aetna and Solimano to the present matter and instead found that New Jersey Manufacturers Ins. Co. v. Blau, 194 N.J. Super. 27 (App.Div. 1984), was applicable. In Blau the workers' comp carrier brought an action to recover benefits paid to a worker's widow after she remarried and thus assertedly was no longer eligible to receive the benefits. The widow counterclaimed to compel the carrier to resume payment of the benefits. The trial court denied the widow's summary judgment and granted the carrier's motion to dismiss the counterclaim and the widow appealed. This court held that exclusive original jurisdiction of the Division of Workers' Compensation over all claims for workers' compensation benefits included a carrier's claim for recovery of benefits paid to a worker's widow after she remarried, as well as her counterclaim for continuation of benefits. In Blau the sole issue was the payment or nonpayment of workers' comp benefits. Here, we are concerned with dual *200 coverage, PIP benefits as well as workers' comp. The Workers' Compensation Court certainly cannot determine the benefits accruing to plaintiffs under the No-Fault Act and the rationale of Blau has no application here.
The Division of Workers' Compensation is vested by statute with exclusive original jurisdiction of all claims for workers' compensation benefits. N.J.S.A. 34:15-49; Aetna 176 N.J. Super. at 536. Since the PIP carrier has the right to pursue the remedies of the employee in the Division or Workers' Compensation in default of a petition by the employee, Aetna at 537 then NJM may intervene in the pending workers' compensation proceedings in order to protect its interest to see that the full measure of benefits are awarded in those proceedings in order to minimize like benefits which may be payable under the No-Fault Act. Cf. Parks v. Colonial Penn Ins. Co., 98 N.J. 42, 48 (1984); see Wunschel v. City of Jersey City, 96 N.J. 651, 666-667 (1984).
Unquestionably, many of the benefits covered under both the No-Fault Act and the Workers' Compensation Act overlap. For instance, in Squeo v. Comfort Control Corp., 194 N.J. Super. 366 (App.Div. 1984), we held that the term "treatment" used in N.J.S.A. 34:15-15 of the Workers' Compensation Act must be construed broadly and held that a self-contained studio apartment attached to the parents' home of the injured employee, a quadriplegic, was a "medical treatment" under the Workmens' Compensation Act. In Paul v. Ohio Cas. Ins. Co., supra, the PIP carrier approved independent living arrangements for a quadriplegic and we concluded that shifts of attendants as well as expenses of a coordinator were part of "ongoing medical treatment" to care for the insured and were covered PIP benefits. Claimants are entitled to the full measure of benefits under both PIP and workers' comp, but of course, are not entitled to duplicate payments. Cf. Bernick v. Aetna Life & Cas. Sur. Co., 158 N.J. Super. 574 (Cty.Ct. 1978).
Plaintiffs need not await the outcome of the workers' comp proceedings to obtain immediate payments from NJM for benefits *201 to which they are entitled under no-fault insurance including payments which may ultimately be reimbursable by Liberty Mutual through workers' comp. The matter is remanded to the trial court for a prompt determination of benefits payable under N.J.S.A. 39:6A-4 and also 39:6A-10, if applicable, as required by N.J.S.A. 39:6A-5.
N.J.S.A. 39:6A-5 was amended effective October 4, 1983[1] to grant insureds an option to submit any disputes concerning benefits claimed to arbitration in lieu of court proceedings. While the injuries sustained by Tina predated the amendment, the claim was made and declined after the date of the amendment. Since the amendment is remedial and procedural, the policy is deemed amended to conform to the statute. See Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373 (1966); Selected Risks Ins. Co. v. Allstate Ins. Co., supra. Therefore, at the option of the plaintiffs, the matter may be submitted to arbitration.
Reversed as to defendant NJM and remanded.
NOTES
[1] While the New Jersey Automobile Freedom of Choice and Cost Containment Act of 1984 was to take effect October 4, 1983, section 8 of the Act dealing with PIP arbitration remained inoperative until January 1, 1984.