EDWARD J. RUPINSKI ET AL. v. ANDREW BIEL ET AL.

[No. 61, September Term, 1979.]

*Decided October 17, 1979.*

The cause was argued before MORTON, MELVIN and LISS, JJ.

*Douglas W. Biser,* with whom was *F. Vernon Boozer* on the brief, for appellants.

*James M. Smith,* with whom were *R. Clark Faint, Jr.,* and *Gebhardt & Smith* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

Josephine G. Ellis and her husband owned a building located in Perry Hall, Baltimore County, Maryland. They were also the sole stockholders of a liquor dispensing corporation known as Harbalt Liquors. She and her husband conducted that business for a period of twelve years during which time her husband suffered two heart attacks. As a consequence, the Ellises decided they could no longer operate the liquor store.

In December of 1976, Mrs. Ellis, on behalf of Harbalt, a Maryland corporation, entered into a contract to sell the liquor license to Spring Pizza, Inc. Spring Pizza, Inc. was the owner of a franchise which it had purchased from Pizza Hut. It proposed to operate a pizza business and to sell alcoholic beverages to its customers from a free standing building located adjacent to the Silver Spring Shopping Center on Belair Road. The officers and directors of Spring Pizza, Inc. were identified as Edward J. Rupinski, James T. Stockdale and Debra D. Schulze, who are the appellants in this case. A number of the individuals protesting the transfer of the license, including Andrew Biel, Charles Link, James A. Persing and others, are listed as the appellees.

The contract between Harbalt and Spring Pizza, Inc. was conditioned on attainment of the approval from the Board of Liquor License Commissioners to transfer the license to the Belair Road address and to reclassify the license from Class A (package goods, beer, wine and liquor) to Class B (beer only). On April 29, 1977, an application for transfer and reclassification was filed by Spring Pizza, Inc. and after a hearing that application was denied by the Board on June 13, 1977 on the ground that the transfer was not required for the accommodation of the public. No appeal was taken from that decision.

Subsequently, a new application for the same relief was filed before the Board of Liquor License Commissioners for Baltimore County which came on for hearing on March 20, 1978. After hearing and argument, the Board, on March 28, 1978, approved the application to transfer the Harbalt license to 8641 Belair Road subject to the restriction that no alcoholic beverages be sold to patrons except with the sale of food. The

protestants appealed to the Circuit Court for Baltimore County and after hearing and argument the presiding judge (DeWaters, J.) remanded the case to the Board for its consideration as to whether the premises occupied by Harbalt were "vacated" within the meaning of Article 2B, Section 75 of the Annotated Code of Maryland (1957, 1976 Repl. Vol.). If such "vacation" had in fact occurred, the court indicated the license was null and void.

In the original hearing before the Liquor Board, a witness for the protestants testified that from February of 1977 until June 13, 1977 the premises were occupied by a Suzuki motorcycle dealership and an H & R Block tax office, and that after February of 1977, it had not been occupied as a package liquor store. At the remand hearing, Mrs. Ellis conceded that these facts were accurate but testified that before renewing the license in 1977, she spoke to the Secretary of the Board, Mrs. Anne Eirman, and was advised by her that the license, if renewed, could be sold. On the basis of that information, the Ellises renewed the license. This testimony of Mrs. Ellis was not contradicted.

After this hearing, the Board reaffirmed its decision to approve the transfer of the license for the following reasons:

> [T]he license was renewed and, although the transfer was denied at the hearing on June 13, 1977, that the contract for the sale of the license was not terminated and subsequently the Spring Pizza, Inc., reapplied for transfer of the license. That during the entire period of time from December 26, 1976, until the hearing of April, 1978, and, in fact, to this day, the transferor retained ownership of the property and testimony was that the tenants could, at any time, be required to leave the premises in order to re-establish the business at the same location. It becomes incumbent upon this Board to decide whether or not the transferor vacated the premises with the intent to terminate the business and the license. Although the business was, in fact, closed and the stock and fixtures sold and removed from the premises, it is the opinion of this Board that the

license was not vacated from the premises by reason of the fact that the licensee did not intend to cease operation without the completion of the sale and transfer of the license.

The fact that the contract for the sale of the license was never terminated and the ownership of the property was retained by the licensee indicated an intent to proceed with the transfer of the license and not to vacate the premises in accordance with the requirements of Section 75 of Article 2B of the Annotated Code of Maryland.

For the reasons above stated, the Board reaffirms the conclusion that the subject license as of the time of the consideration of the application for transfer, was, in fact, a valid, viable license and subject to consideration for transfer.

The appellees appealed to the Circuit Court for Baltimore County as authorized by the provisions of Article 2B, Section 175(e) Annotated Code of Maryland (1976 Repl. Vol.) which provides as follows:

(1)(i) Upon the hearing of such appeal, the action of the local board shall be presumed by the court to be proper and to best serve the public interest. The burden of proof shall be upon the petitioner to show that the decision complained of was against the public interest and that the local board's discretion in rendering its decision was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or that such decision was beyond the powers of the board, and was illegal. The case shall be heard by the court without the intervention of a jury. If in the opinion of the court it is impracticable to determine the question presented to the court, in the case on appeal, without the hearing of additional evidence, or if in the opinion of the court any qualified litigant has been deprived of the opportunity to offer

evidence, or if the interests of justice otherwise require that further evidence should be taken, the court may hear such additional testimony to such extent and in such manner as may be necessary.

After a hearing and argument Judge DeWaters issued the following memorandum reversing the Board of Liquor License Commissioners in which he said:

This is an appeal from the Board of Liquor License Commissioners for Baltimore County, hereinafter referred to as the board. The case was argued before this court on an earlier occasion at which time the matter was remanded to the board for further testimony. Further testimony was required to determine the issue in this case involving the expiration of the license which is sought to be transferred.

On September 9, 1978, testimony was taken by the board on this issue. The testimony was elicted [sic] from Josephine G. Ellis. Mrs. Ellis testified that her husband had suffered two heart attacks and it was decided that the liquor operation would be abandoned. Harbalt Liquors, Inc. were the holders of the license. On December 20, 1976 an agreement was signed for the sale of the liquor license to Spring Pizza, Inc. In Feb. of 1977 the liquor operation ceased and all stock and inventory was sold. The premises was leased to businesses which do not conduct any type of liquor operation. The license has not been used in any establishment for a liquor business since Harbalt Liquors, Inc. ceased operations. Subsequent to ceasing operations the board was contacted and license fees have been kept current. On April 29, 1977 an application for transfer was filed and denied on June 13, 1977. Based on this evidence the board ruled that the license had not expired and granted the requested transfer.

Article 2B, sec. 75(a) states as follows: [1]

"On the tenth day after the holder of any license issued under the provisions of this article shall have vacated, or been evicted from the premises for which the license was issued, the license shall expire unless an application for approval of a transfer thereof to another location of assignment to another person pursuant to § 74 of this article or an application pursuant to § 78 of this article has been approved or is then pending. However, the official authorized to issue licenses, in his discretion, may postpone the expiration for an additional period not exceeding 20 days in any case to avoid undue hardship."

The board does not have authority to grant this transfer unless the license has not expired. The board is controlled by the statute which governs the expiration of a liquor license. The controlling statute is Art. 2B, sec. 75(a), supra. It is clear from the facts in this case that a transfer was not granted within 10 days and it is equally clear that an application for approval of a transfer was not filed within 10 days, so that such application could be pending. The board's decision must, therefore, stand or fall on the proper interpretation of the word "vacated" in the statute. The testimony of Mrs. Ellis establishes the fact that the premises were indeed vacated. Her testimony reveals that the operation of a liquor license ceased to exist in February 1977. Mrs. Ellis testified that the premises had not been used since that date for a liquor license operation, nor has the license been used on any other premises. She also established the fact that all stock and inventory has been sold and that the holder of the license was a corporation that leased the premises from the Ellises. A ruling that this does not constitute "vacated" within the meaning of the statute is not

1. Article 2B, Sec. 75(a) has since been amended and now provides for a 180 day vacation period; however, the amendment does not affect our holding in this case.

supported by any substantial evidence and is unreasonable. The board held that the contract signed on December 20, 1976 and the continuing intent of the parties to transfer the license coupled with the fact that the Ellises continued to own the premises avoided the term "vacated" as used in Art. 2B, sec. 75(a), supra. The reasoning is faulty because the holder of the license was Harbalt Liquors, Inc. and not the Ellises.

For reasons stated above the ruling of the board in the above case is reversed.

The appellants, still unwilling to surrender, noted an appeal to this Court in spite of the provisions of Article 2B, Section 175(f) which provide that when a circuit court shall have reviewed an appeal from the Liquor Board:

The decision of the court thus given shall be final and effective at once. No further appeal shall lie nor shall there be any other remedy by which the local board's decision may be reviewed in court, either by way of mandamus, injunction, certiorari or otherwise. However, if any judge of the circuit court of any county, or the Baltimore City Court, shall in any case finally decide a point of law at variance with any decision previously rendered by any other judge of the State on the same question, an appeal may be taken from the decision rendered to the Court of Special Appeals. Any such appeal shall not stay the action of the lower court. The Court of Special Appeals shall only decide the question of law involved in such an appeal and shall not pass upon any question of fact.

The appellants, recognizing their problem in overcoming the hurdle of jurisdiction in this Court, launched an all-out attack on the constitutionality of Article 2B, Section 175(f) contending that the restriction limiting an appeal to this Court only to those instances when "any judge of the circuit court of any county, or the Baltimore City Court, shall in any case

decide a point of law at variance with any decision previously rendered by any other judge of the State on the same question," amounted to a denial of equal protection and due process. The appellees devoted a substantial portion of their brief to this issue apparently anticipating a motion to dismiss their appeal under Article 2B, Section 175(f). The issue became moot, however, when the appellants were granted permission by this Court to supplement the record on appeal by including in the record the case of *Seekford v. Board of Liquor License Commissioners for Baltimore County*, filed in the Circuit Court for Baltimore County, Misc. Case No. 5923. An examination of that case indicates that in a case similar to the one here considered the presiding judge, H. Kemp MacDaniel, had on July 8, 1976 ruled that "During each year that the license had been renewed the annual fee had been paid and, therefore, the privilege represented by that license was vested by reason of its continued and proper exercise." Counsel for appellees conceded at argument that this ruling is sufficient to meet the requirements of Article 2B, Section 175(f), and that jurisdiction to consider this appeal is vested in this Court. Under these circumstances, it is not necessary for us to consider or rule on the constitutionality of that section.

The sole question to be decided by this appeal is whether the circuit court was correct in holding that the alcoholic beverage license involved in this dispute expired by operation of law. We are, of course, aware of the limitation imposed upon us that we may only decide a question of law involved in this case and shall not pass upon any question of fact. We conclude that the question of law here involved is the meaning of the word "vacate" as set out in Article 2B, Section 75(a).

The issuance or transfer of liquor licenses confers no property rights on the holders, and furthermore, the licenses are subject to suspension, restriction or revocation pursuant to the rules and regulations promulgated under Article 2B. The holder of a license possesses a mere privilege. *See Dundalk Liquor Co. v. Tawes*, 201 Md. 58, 92 A.2d 560 (1953); *Federico v. Bratten*, 181 Md. 507, 30 A.2d 776 (1943).

The Court of Appeals has said that a term in a statute, when not defined in the statute itself, should be read according to its commonly accepted meaning. *Williams v. Loyola College,* 257 Md. 316, 263 A.2d 5 (1970); *Simpler v. State, ex rel. Boyd,* 223 Md. 456, 165 A.2d 464 (1960). The intent of the legislature is to be sought from the words used in the statute and to ascertain that intent the Court will consider the words by their natural and ordinary signification. *State Farm Mutual v. Insurance Commissioner of Maryland,* 283 Md. 663, 392 A.2d 1114 (1978); *Schweitzer v. Brewer,* 280 Md. 430, 374 A.2d 347 (1977); *Harden v. M.T.A.,* 277 Md. 399, 354 A.2d 817 (1976); *Maryland-National Capital Park & Planning Comm. v. Rockville,* 272 Md. 550, 325 A.2d 748 (1974).

We have been unable to find any cases in this state interpreting or applying the meaning of the word "vacated" as used within the context of Article 2B, Section 75(a). Black's Law Dictionary 1717 (4th ed. 1968) defines vacate in the context of this case as follows: "To move out; to make vacant or empty; to leave; especially, to surrender possession by removal; to cease from occupancy."

The Court of Appeals has on several occasions considered the question of what may constitute a vacancy within the context of a forfeiture of insurance coverage where a premises is permitted to remain vacant. In *Norris v. Conn. Fire Ins. Co.,* 115 Md. 174, 178-79, 80 A. 960 (1911) the Court had before it a policy of insurance which provided that where a house occupied by the assured was permitted to remain vacant for a period of ten days the insurance coverage was forfeited. The Court there said:

> [W]hen the occupant of a dwelling house moves out with his family, taking part of his furniture and all the wearing apparel of the family and makes the place of his abode in another town, although he may have an intention of returning in eight or ten months, such dwelling house while thus deserted must be regarded as unoccupied; that is, vacated, according to the natural and ordinarily received import of those terms.

644

*See also Agricultural Ins. Co. of Watertown v. Hamilton,* 82 Md. 88, 33 A. 429 (1895).

There is no real dispute between the parties to this case as to the factual situation. The only controversy is whether the facts as agreed upon amounted to such a vacating of the licensed premises as to make the license null and void as a matter of law. We conclude that the trial court was correct in holding that Harbalt had, in fact, vacated the premises for more than ten days in February of 1977 when it removed all stock and inventory and Mrs. Ellis leased the licensed premises to other businesses which were not related in any manner to an operation involving an alcoholic beverage license. Section 75(a) provides for only two exceptions to the rule that the license for the leased premises shall expire on the tenth day after eviction or vacation. These exceptions are found in Section 78 which is concerned primarily with the death of a licensee, not here applicable, and Section 79 which involves a situation where "an application for transfer has been approved or is pending." From our reading of the record, it is clear that the first period of vacation began in February, 1977 and ended on April 29, 1977 when the first application for transfer, afterwards denied, was filed. The second period began on June 13, 1977 and ended on January 26, 1978 when the subsequent application for transfer was filed. It is undisputed that within these periods of time the licensee (Harbalt) removed its inventory, ceased operations, and the premises were rented to other concerns not engaged in the liquor business, and that there were no applications for transfer either pending or approved.

We do not find the fact that Harbalt had entered into a contract to transfer the license to Spring Pizza, Inc. before it vacated the premises is of any significance. Nor does the alleged advice given to the Ellises by an employee of the Liquor Board as to the effect of the renewal of the license change the clear directive found in the language of Section 75(a) of Article 2B. The enactment of that section was apparently based on the public policy that a license should be granted only when necessary for the accommodation of the

general public and that when the license is no longer being utilized it should be considered null and void.

*Judgment sustained.*
*Costs to be paid by appellants.*