## UNION PETROLEUM S. S. CO. v. UNITED STATES.*

Circuit Court of Appeals, Second Circuit. April 4, 1927.

No. 250.

**1. United States ⏘130—Payment by owner of ship requisitioned by government to broker on account of commissions on freight carried after requisition held not payment of debt due from United States.**

Where owner of ship chartered to the French government and requisitioned by the United States, but allowed to continue carriage for the French government, paid broker, who negotiated charter with French government, commissions based on freight carriage after requisition by the United States, *held*, that such payment was not the payment of a debt owing by the United States, entitling owner to deduct it in accounting with the United States.

**2. United States ⏘141—Evidence held to show that charter of ship was not requisitioned with ship.**

Evidence that the United States, after requisition of ship chartered by the French government, allowed it to continue in the service of that government, but made a different contract covering each voyage, *held* to show that charter between owner and French government was not requisitioned.

**3. War ⏘14—Commission payments to broker by shipowner on account of freight carriage after requisition by United States held not "recovery" against owner, within meaning of requisition charter.**

Where the United States, requisitioning ship chartered to the French government by requisition charter, compounded all damages suffered by owner, except "recoveries against the owner by third parties on the vessel's commitments," and where owner voluntarily, without notice to the United States, paid broker, who negotiated charter party with French government, commissions based on freight paid by French government after requisition, such payment was not a "recovery" within the meaning of the exception quoted, for which the United States was liable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Recover —Recovery.]

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against the Union Petroleum Steamship Company, as owner of the steamship Westwego. Judgment for plaintiff (15 F.[2d] 383); and defendant brings error. Affirmed.

In April, 1917, the Union Petroleum Steamship Company (hereinafter referred to as the defendant) was the owner of the ship Westwego. The vessel was under charter for the duration of the war and three months

*Certiorari denied 47 S. Ct. 770, 71 L. Ed. ——.

thereafter to the French government for the transportation of petroleum products from American to European ports. France was to pay an agreed price for each cargo, and an agreed freight for each voyage, and was to provide war risk insurance on stipulated terms.

On October 12, 1917, after having made several voyages, the vessel was requisitioned by the United States. Throughout the period of requisition, the Westwego carried cargoes of benzine purchased by the French government from the defendant. She was operated by the defendant as agent for the United States under a requisition charter. The several voyages during requisition were performed on much the same terms as those agreed upon in the charter between the defendant and France. All but one of such voyages, however, were at different freight rates, and the United States furnished war risk insurance for all the voyages. For the last two voyages, the United States and France executed charter parties. The total saving to France by reason of the change in freight rate and insurance was approximately $280,000. After the termination of the requisition, five further voyages were made under the charter between the defendant and France.

The defendant had contracted with a broker, Fisher Jones, to pay him commissions on the value of the cargo and on earned freight for each voyage performed under the defendant's charter to France. Jones claimed such commissions in respect to the voyages made during the requisition period. No question arose as to commissions on cargo sales. These were paid by defendant. But disputes did arise as to whether the defendant or the United States owed Jones commissions on the freight. They amounted to approximately $50,000. This sum the defendant withheld on its accounting with the United States, and paid to Jones. To recover it the United States brought suit in assumpsit. The case was tried by the court without a jury, and judgment given for the plaintiff. The defendant brings this writ of error.

John M. Woolsey and Delbert M. Tibbetts, both of New York City, and Frederic R. Sanborn, of Brooklyn, N. Y., for plaintiff in error.

Emory R. Buckner, U. S. Atty., and Walter Schaffner, Sp. Asst. U. S. Atty., both of New York City.

Before MANTON, HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] It cannot be successfully maintained that the defendant's payment to Jones was payment of a debt owing to him by the United States. In Omnia Commercial Co. v. United States, 261 U. S. 502, 43 S. Ct. 437, 67 L. Ed. 773, it was held that the requisition of the entire output of a steel company, thereby depriving it of the means to perform its contract to deliver steel plate to the Omnia Company, gave the promisee no right to compensation from the government. In Berg v. United States, 59 Ct. Cl. 462, affirmed, 269 U. S. 535, 46 S. Ct. 100, 70 L. Ed. 399, it was held that a broker, who had negotiated a charter party between an owner and a third person, had no claim against the United States, even though the United States, after requisition of the vessel, made a substituted charter with the third person, which it got only because the broker had negotiated the first charter. There would be less reason to recognize a claim in favor of the broker when the substituted charter party is not with a private person, but with a foreign power with whom the United States was already allied in the war.

[2] The defendant contends, however, that the United States did not make a new and substituted charter party with the French government, but actually took over the old, thus coming within the doctrine of Brooks-Scanlon Corp. v. United States, 265 U. S. 106, 44 S. Ct. 471, 68 L. Ed. 934. Whether the broker would have any claim against the United States if in fact there was a requisition of the defendant's charter party, we need not stop to consider, for it appears to us clear beyond controversy that the charter party was not requisitioned. That nothing of the sort was intended, despite the telegram from the Shipping Board that "to abrogate this charter was not contemplated," is proved by the fact that the United States determined separately for each voyage where the ship should go. This is entirely inconsistent with an assumption of the defendant's charter party. In that event there would have been an obligation to make the voyages, and nothing to determine.

Moreover, the United States had no intent to get the benefit of the obligations of the French government under the charter party. On the contrary, those obligations were modified in respect to freight and insurance to the benefit of France in the amount of $280,000. The United States did not take over a commercial venture, but seized the ship as an instrument of war. It was found convenient in the prosecution of the common war aims of the United States and its ally to use the ship to carry benzine to France, provided the United States did not need it for other purposes. Whether it did so need it was determined prior to each voyage. To interpret such conduct as a requisition of the defendant's charter party would be a complete misapprehension of the situation.

Therefore it seems to us clear that the United States did not become obligated to the defendant on the theory that the defendant paid a debt due Fisher Jones from the United States.

[3] We pass, then, to a consideration of the problem whether the United States is obligated to the defendant under the requisition charter or because of consequential damages suffered by the defendant from the seizure of the vessel. The latter source of responsibility could exist only in case the defendant was obligated to pay Fisher Jones commissions in respect to freight earned under the voyages made during requisition. It may well be argued that the seizure frustrated the brokerage contract, but we find it unnecessary to decide that question, because the requisition charter expressly compounds all damages suffered by defendant except those expressly excepted by its terms.

The only exception possibly applicable is found in the proviso to section 2:

"Provided, however, that the acceptance of this requisition charter shall be without prejudice to the claim, if any, the owner may have against the United States arising out of recoveries against the owner by third parties on the vessel's commitments."

The word "recoveries" as used in this phrase must be given its ordinary meaning, which is the establishment of a right by the judgment of a court. See 34 Cyc. 764, and cases cited. A voluntary payment, made without the knowledge of the United States, cannot be considered a "recovery," even if it be conceded arguendo that Jones could have obtained a judgment against the defendant and that, if he had, such judgment would be deemed a recovery "on the vessel's commitments." The defendant accepted the requisition charter in full settlement of all claims except claims arising out of "recoveries" against it. Doubtless this limitation was inserted to secure to the United States an opportunity to intervene and contest suits brought against the defendant for which the United States might ultimately be responsible. But whatever the purpose, we are not

18 F.(2d)—48

at liberty to change the contract by failing to give recognition to that unequivocal phrase.

Whether the position of the United States would be prejudiced if it were allowed to dispute the validity of a voluntary payment by the defendant when the defendant seeks to deduct it in its accounting is beside the point. A claim voluntarily paid is not within the stipulated exception. Apparently the payment was made by the defendant without consulting its attorneys, and certainly it was made behind the back of the United States which had definitely refused to recognize the validity of Jones' claim. Whatever the reason for the payment it deprived the United States of the opportunity for intervention and contest which the contract had reserved to it. We see no hardship in holding the defendant to its contract.

This conclusion makes it unnecessary to consider the other points presented in the argument.

The judgment is affirmed.