[Civil No. 4044.   Filed February 27, 1939.]

[87 Pac. (2d) 488.]

NELLIE P. COVERT, Appellant, v. JAMES D. RANDLES and F. RAY RISDON, Appellees.

Mr. L. J. Cox, for Appellant.

Mr. Frederic G. Nave and Mr. Henry R. Merchant, for Appellees.

ROSS, C. J.—James D. Randles and F. Ray Risdon, members of the bar of the state of California, commenced this action against Nellie P. Covert to recover compensation for legal services claimed by them to have been rendered defendant under and by virtue of the following contract:

"March 27, 1936.

"F. Ray Risdon and Jas. D. Randles

"Gentlemen: This will be your authority to represent me in endeavoring to recover for me approximately $41,875.00 worth of bonds that have been stolen from me, or their equivalent in cash. The consideration for these services will be as follows: $250.00 cash retainer fee, and 8% of the amount recovered up to the sum of $20,000.00, and 5% of the balance recovered. This is your authority to act.

"NELLIE P. COVERT.

"We accept the foregoing contract on the terms and conditions therein specified and agree to well and truly represent Nellie P. Covert in attempting to recover the property mentioned.

"F. RAY RISDON
"JAS. D. RANDLES."

The trial was before a jury and at the conclusion of the introduction of evidence both the plaintiffs and defendant moved the court for a directed verdict. Plaintiffs' motion was granted and the jury rendered its verdict in their favor in the sum of $2,389.59, upon which judgment was duly entered. Thereafter, on motion by defendant for a new trial, the court ordered the judgment reduced by $356.25, leaving it $2,033.34. This sum was arrived at by calculating plaintiff's compensation at 8 per cent. on $20,000 and 5 per cent. on $8,667.51 worth of bonds stolen from defendant, the recovery being such sums plus $7,125, on which sum the plaintiffs, in accordance with the court's order, remitted their percentage of $356.25. The defendant appeals.

We shall hereafter refer to the parties as they appeared below.

There is no question but that the defendant executed the contract with plaintiffs and, although she in her answer charged plaintiffs with fraud in obtaining the contract, there was no evidence to support such allegation. Two or three days after the execution of the contract, defendant gave to the plaintiffs a description of the bonds stolen, including serial numbers, etc., and also gave them a general power of attorney to proceed to recover the bonds or the proceeds thereof. This was all done in Los Angeles. After she returned to her home in Tucson from Los Angeles she realized that her contract with plaintiffs covered the bonds impounded in the courts, and she then sent them another power of attorney excepting the bonds in the courts in California and limiting plaintiffs' power to collect to approximately $12,000 worth of bonds or their value.

Instead of discharging plaintiffs, as she had a right to do at any time and for any or no reason, being responsible in *quantum meruit* for services rendered until they were discharged, she continued to treat them as her attorneys but often failed and refused to cooperate with them in entire fairness. At the time of entering into the contract, there were in the United States District Court at Los Angeles, of defendant's stolen property, bonds for the sum of $23,150, with accrued interest of $1,339.13 or all told $24,489.13; and in the United States District Court for Arizona, at Tucson, $7,125, leaving $10,260.37 worth of her bonds either in the hands of the thieves or persons or concerns to whom they had been sold by the thieves. Part of this amount was located and actions brought to recover it. As a result of one of such actions there was recovered by compromise $4,178, the amount in-

volved being $4,680.54. This compromise was effected after defendant had substituted another attorney in the case, but the evidence tends to show plaintiffs could have secured a larger sum if defendant had cooperated with them or given her consent.

There seems to be no dispute in the evidence as to the kind and amount of labor performed by the plaintiffs under the contract. When the motion for an instructed verdict was made, the question was whether such services were compensable under the contract. There being no dispute or controversy as to the services performed, the question for decision was not one of fact but one of law and, we think, one for the court to determine. Under such circumstances the court properly directed the verdict.

As we read the record, when the defendant first interviewed the plaintiffs with a view of employing them, many of the stolen bonds and securities that she was seeking to recover had been impounded in the federal courts of southern California and Arizona in connection with criminal trials being prosecuted against the parties who had stolen her property, and she gave all this information to the plaintiffs, and after a full consideration of these facts they entered into the contract, and immediately thereafter the plaintiffs took such steps as they thought advisable to recover the property.

In April, 1937, when defendant employed substitute counsel, plaintiffs immediately sought to secure a settlement with the defendant and wrote her stating that when she settled they would deliver to her the bonds and coupons that they had recovered. However, the defendant failed and refused to make any settlement. Plaintiffs then sent her property to her and thereafter brought this action on the contract for their services.

During the period of plaintiffs' employment (over a year) they appeared in court eighteen different times in behalf of defendant, and held a great many conferences with attorneys and litigants; had written many, many letters to defendant, and had recovered or assisted in recovering the bulk of her bonds in specie or cash.

The defendant's assignments based on fraud in the inception of the contract, and there are several of them, do not require consideration for the reason that the evidence fails to show any fraud. The only suggestion in that direction is that defendant was an elderly woman, in poor health, greatly worried over the loss of her property and very anxious to recover it when she made the contract. There is nothing to indicate she did not fully understand the contract, or that she did not execute it freely and of her own volition. If the contingent fee agreed upon were out of proportion to the services to be rendered, it would be the duty of the court to deny recovery on that account but not for fraud, none being shown. The percentage stipulated in the contract as plaintiffs' compensation, contingent upon recovery, is not as much as is ordinarily charged. The ordinary contingent fee for making collections is a much larger percentage.

The defendant contends, however, that under the terms of the contract plaintiffs should recover nothing for their services. She interprets it to mean that plaintiffs' compensation was to be a percentage of amounts recovered through judicial process, as by judgment and execution. If that be the meaning of the contract, the plaintiffs are entitled to nothing for their services. They recovered approximately $24,-000 in bonds from the federal court in California and its officers, and, as a result of an action brought by

them, defendant obtained by way of compromise $4,178. But for such services, if defendant is right, plaintiffs cannot recover. It is true the contract provides that plaintiffs' percentage shall be "8% of the amount recovered up to the sum of $20,000.00, and 5% of the balance recovered." It is also true the word "recover" when employed in statutes and in contracts as a basis for calculating a fee or percentage has attained a well-defined meaning. The various definitions of the word given by 53 Corpus Juris, 655, section 1, are:

"Recover. (sec. 1) A. *In Broad General Sense.* To collect; to come into possession of; to get, obtain, procure, receive, and the like; . . .

"(Sec. 2) B. *In Narrower Legal Sense* the term has a well defined meaning; and has been variously defined as to be successful in a suit; to collect or obtain the amount, possibly by a suit at law; to have judgment; to obtain a favorable or final judgment; to obtain by course of law; to obtain by judicial action or proceeding, or in any legal manner; to obtain by means of an action, in contrast to voluntary payment; to obtain title to by final decree or judgment in a court of law; to succeed in an action, or in a law suit; and in this legal sense, it has been held not to include necessarily, or even ordinarily, the actual payment of the money sued for."

If we should give the word "recover" the narrow meaning suggested by the text, it is certain we would disregard the intent of the parties to the contract and make a new contract for them. This the court has no power to do. The *intent* of the parties governs and if it appears from the contract that the parties intended that the word "recover," as used therein, should mean the same as "to collect," "to come into possession of," "to get," etc., we should so construe it. At the time the contract was made, the defendant and the plaintiffs knew that there were in the courts

in California and Arizona about $31,000 worth of her bonds; that there were approximately $10,000 worth of her bonds that could not be located, or had been disposed of by the parties who had stolen them. If it was the intent of the parties that plaintiffs should receive nothing whatever for helping to get possession of the bonds that were impounded in the courts, the contract for plaintiffs' services was to recover the $10,000 not impounded. Of course the contract was not limited to the latter sum, because if it were there could not be as much as $20,000 for it to operate on. There would have been no reason to stipulate a compensation of 8 per cent. up to $20,000, nor any reason for stipulating for 5 per cent. on the balance, for there would have been no balance. It is clear to the court's mind that the parties intended that the plaintiffs should be compensated for getting possession of and returning to defendant the bonds impounded in the courts.

A compensation of 8 per cent. for recovering from the courts the bonds impounded therein up to $20,000 seems large indeed but 5 per cent. on the balance, especially on what plaintiffs might recover of the $10,000 worth of defendant's bonds not located, or if located claimed by innocent third parties, was very little. Evidently it was intended plaintiffs' compensation should be spread over the whole recovery effected by them and for that reason it was fixed rather high on items that appeared not to require much labor or effort and exceedingly low on the items that would be recovered, if at all, after litigation. If the contract, instead of providing the percentages it did, had stipulated plaintiffs should receive one-half of any recovery of defendant's property not located or if located claimed by third parties, their compensation would have been approximately what the trial court

allowed and the reasonableness of the fee would hardly have been questioned.

We think the correct rule for construing contracts for contingent fees is well stated in 7 Corpus Juris Secundum (Attorney and Client), p. 1089, § 191, as follows:

"A contingent fee is generally reckoned on the net amount actually recovered by the client through the efforts of the attorney, or through a proper settlement by the client.

"Under a contract for a contingent fee, the percentage to which the attorney is entitled and the amount or property on which it is to be based depend on *a fair and reasonable construction of the terms of the agreement;* and such fee generally is recoverable only on the property or funds, within the terms of the contract, which are recovered by reason of the attorney's efforts, and, therefore, is not recoverable on uncontested claims or sums voluntarily paid." (Italics ours.)

It will be noted that it is the duty of the court to give contracts for contingent fees fair and reasonable construction, and it seems to us that the contract herein involved intended that plaintiffs should be compensated for their services in obtaining for defendant the bonds impounded in the courts. Defendant herself so construed the contract when she gave to the plaintiffs the powers of attorney mentioned in the early part of this opinion.

We also believe that plaintiffs are entitled to their percentage on the $4,178 obtained for defendant by compromise. In *Walker* v. *Wright,* 28 Ariz. 235, 236 Pac. 710, we held that if the client compromised, with or without the attorney's consent, the matter he was employed to look after upon a contingent basis, the attorney could recover the full fee fixed in the compensation contract, if the result of

the compromise was substantially the same as that provided for in the contract. We think the facts in the present case fall within the rule there stated. The amount involved was $4,680.54 and the compromise was $4,178.

■ Defendant makes the point that the compensation of plaintiffs should be based on the cash value of the bonds and not on their par value. We think that is true, but the trial was had throughout on the theory that the cash value and the par value were the same, and nothing to the contrary appears on appeal. The point was not made in the motion for new trial.

■ Defendant assigns as error a rejection of an offer of evidence but this assignment is not argued and we treat it as abandoned.

We have considered all of defendant's assignments, those not discussed as well as those discussed, and conclude she was given a fair trial free from prejudicial error.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.