889 P.2d 20

In the Matter of the CONSERVATORSHIP OF Chad Scott FALLERS, Dawn Fallers, Justin Ray Fallers, and Brianna Lyn Fallers, Protected Minor Persons.

Bert L. ROOS, Petitioner–Appellant,

v.

Steven A. HIRSCH, guardian ad litem for the protected minor persons, Respondent–Appellee.

No. 1 CA–CV 92–0285.

Court of Appeals of Arizona, Division 1, Department C.

May 31, 1994.

Review Denied Feb. 22, 1995.

Ulrich, Thompson & Kessler, P.C. by Paul G. Ulrich and Donn G. Kessler and Plattner Verderame, P.C. by Richard S. Plattner, Phoenix, for petitioner-appellant.

Bryan Cave by Steven A. Hirsch and Robert W. Shely, Phoenix, for respondent-appellee.

## OPINION

VOSS, Judge.

This appeal is from the probate court's judgment establishing Appellant Bert L. Roos's attorney's fees for his representation of four minors in a wrongful death action, and from the denial of his Motion for New Trial. The sole issue in this appeal is whether the probate court erred in limiting Roos's attorney's fees to $70,260.00 rather than awarding him the $315,263.00 called for by the contingency fee agreement entered into by the minors' conservator. Because we find that the probate court abused its discretion in limiting the amount of Roos's fee, we reverse and remand with instructions to award Roos his contingent fee.

## I. FACTS AND PROCEDURAL HISTORY

On March 13, 1989, Scott Fallers died from injuries he received in a motorcycle accident. Surviving him were his pregnant wife, his parents, and his four children from his previous marriage. Celeste (Fallers) Palmer, Scott's former wife, retained Roos to represent her four minor children in the wrongful death action. She agreed to a one-third contingent fee. Several weeks later, Roos was informed that Marlene Appel had been retained by Coreen Fallers, Scott's widow, to represent her, her and Scott's unborn child, Brandon, and Scott's parents. Appel was likewise retained pursuant to a one-third contingency fee agreement.

Shortly after they were retained, Roos and Appel began working as a team. Because Appel represented Scott's widow, Appel signed and filed the complaint and was counsel of record in the suit. Both Roos and Appel participated in drafting the pleadings, in court hearings, in discovery, and eventually in settlement negotiations.

The wrongful death action was pending for two years. On the day prior to trial, the defendants' insurer admitted liability, and the case was reset for a trial on damages. Then, with the trial on damages only four days away, the parties agreed to settle the lawsuit for $2,000,000.00 cash. Of that amount, each of the minors represented by Roos was to receive $237,500.00.

Following the settlement, Roos and Appel applied to the probate court for approval of the minors' proposed settlement. Probate Court Commissioner Kenneth W. Reeves III, approved the settlement, but *sua sponte* questioned the reasonableness of the attorneys' one-third contingent fees. Because of his concerns, Commissioner Reeves appointed Steven A. Hirsch as guardian ad litem for the purpose of reviewing attorneys' fees. Following Hirsch's appointment, Commissioner Reeves recused himself and the case was transferred to Judge Morris Rozar.

Hirsch reviewed the court's file and affidavits filed in support of attorneys' fees. He concluded that Appel had received sufficient compensation from her one-third recovery from Coreen and Scott's parents; therefore, Hirsch recommended that Appel receive no fees for her representation of Brandon. As to Roos's request, Hirsch recommended that Roos be compensated $61,800.00.[1] Roos and Appel objected to Hirsch's recommendations. At a hearing regarding the attorneys' fees, Roos and Appel presented evidence supporting their claims for the full one-third contingent fees. Following the hearing, Judge Rozar awarded Appel one-third of Brandon's recovery, but awarded Roos $70,260.00 rather than the $315,263.00 called for by the contingency fee agreement. Roos filed a Motion for New Trial, which was denied. Roos filed a special action in this court, but jurisdiction was declined. This appeal is from the denial of the Motion for New Trial and the judgment limiting Roos's attorney's fees.

## II. DISCUSSION
### A. THE STANDARD

While courts in the United States recognize attorneys' rights to enter into contingen-

---

1. Hirsch calculated this rate by multiplying a "reasonable hourly rate" by the number of hours worked and adding a premium for deferred payment.

cy fee agreements, *In re Swartz*, 141 Ariz. 266, 272, 686 P.2d 1236, 1242 (1984), potential abuse of these agreements makes regulation and review a necessity.

In Arizona, contingency fee agreements are recognized and regulated by the Arizona Rules of Professional Conduct ("ER"). ER 1.5. Furthermore, courts have acknowledged their inherent power to prevent the collection of excessive, unreasonable contingent fees. *Swartz*, 141 Ariz. at 272, 686 P.2d at 1242; *Covert v. Randles*, 53 Ariz. 225, 230, 87 P.2d 488, 490 (1939).

■ Predicting how courts will exercise this power is difficult because the determination of whether a fee is unreasonable must be based on the individual facts of each case. *Swartz* illustrates the process courts should use to determine the unreasonableness of a contingent fee. In *Swartz*, the court relied on the Model Code of Professional Responsibility, Disciplinary Rule 2–106. That rule, as adopted by Arizona as ER 1.5(a), provides a list of eight factors for the court to consider in determining whether a fee is unreasonable.[2]

In *Swartz*, the court determined that the contingent fee was excessive where liability was clear, there were no difficult or novel legal questions, counsel spent approximately twenty to thirty hours on the case, and the client received no net recovery after the payment of costs, attorneys' fees, and the State Compensation Fund's lien.

■ Roos argues that the probate court should not reduce the contingent fee except in an egregious case such as *Swartz*. Hirsch counters that the court must make a determination of the reasonableness of the fee by balancing the considerations established in *Swartz*, ER 1.5(a), and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 186–88,

673 P.2d 927, 930–32 (App.1983). The probate court has adopted this latter approach in a policy statement providing for the review of contingent fees in all cases involving minors. Standards for Approval of Attorney's Fees in Contingent Fee Cases Involving Minors and Incapacitated Persons ("Standards") (July 2, 1991). Pursuant to this policy, the probate court considers the reasonableness of contingent fees based on the circumstances of each case, applying the factors listed in ER 1.5(a) and *Swartz*. The court will not base its decision of reasonableness "solely upon the hourly rates, hours billed, or fixed percentage set in advance." Standards.

We decline to adopt a rule limiting the probate court's authority to reduce an attorney's fee to those cases with egregious facts, such as in *Swartz*, where an attorney's attempt to collect the full contingent fee subjects him to discipline. *See In re Estate of Sass*, 246 Ill.App.3d 610, 186 Ill.Dec. 512, 616 N.E.2d 702 (1993) (court must scrutinize contingent fees in cases involving minors, and has power to reduce fee to a reasonable fee); *Estate of Murray v. Love*, 411 Pa.Super. 618, 602 A.2d 366 (1992) (court may reduce contingent fee to protect minors' interest in wrongful death settlement). Instead, we recognize and affirm the probate court's discretion to determine a reasonable fee on a case by case analysis, pursuant to the standards established in ER 1.5(a) and *Swartz*, as reflected in the probate court's Standards.

## B. APPLYING THE STANDARD

■ Alternatively, Roos argues that even if the court applied the correct legal standard, the record does not support the court's conclusions as to Roos's participation in the wrongful death action and his ability to take

---

2. (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
ER 1.5(a).

the case to trial.[3] A conclusion not supported by the facts is considered an abuse of discretion. *Grand Real Estate, Inc. v. Sirignano,* 139 Ariz. 8, 14–15, 676 P.2d 642, 648–49 (App.1983); *United Imports and Exports, Inc. v. Superior Court,* 134 Ariz. 43, 46, 653 P.2d 691, 694 (1982).

■ Here, unlike the attorney in *Swartz,* Roos worked approximately 240–350 hours representing his clients, the case was "not a slam dunk," and no one disputed that the clients received an excellent result from Roos's efforts. Nevertheless, in his December 11, 1991 minute entry, Judge Rozar delineated the following as reasons for his determination that the contingent fee was unreasonable: (1) this was an ordinary wrongful death action; (2) Roos was not the counsel of record; and (3) the conservator had not been appointed prior to her agreement to the contingent fee. However, in the hearing for the Motion for New Trial, Judge Rozar claimed the above factors were unimportant in his determination that the fee was unreasonable. At the hearing Judge Rozar concluded "I don't think he (Roos) earned $1,350.00 an hour for what he did in this case." To support his conclusion Judge Rozar stated that Roos was not an equal participant with Appel in the wrongful death action as evidenced by: (1) his failure to appear as counsel of record; (2) his role as an advisor only to Appel; (3) his lack of experience; and (4) Judge Rozar's belief that Roos was incapable of taking the case to trial if Appel was absent.

At the hearing on the Applications for Attorneys' Fees, Judge Rozar noted that Appel bore all the duties and obligations for the representation of the four minor children because Roos never filed a formal notice of appearance in this case. Judge Rozar's contention that Appel bore all responsibility is not supported by the record. Appel and Roos testified that Roos was considered counsel for the four minors. Furthermore, Judge Lawrence O. Anderson and opposing counsel in the wrongful death action ("Ev-

ans"), repeatedly recognized Roos as co-counsel for the plaintiffs.

As to the formal filing of a notice of appearance, an expert witness testified that the failure to file a formal appearance was irrelevant. In fact, even Judge Rozar noted that such a formality was simply a technicality, and it was unimportant in his consideration.

Appel, Roos, and Evans testified that Roos fully participated in every aspect of the discovery and settlement processes and was considered an equal participant to Appel. He interviewed witnesses, participated and asked questions in all depositions, attended and participated in all but one hearing, collected and organized evidence, performed research, reviewed and revised pleadings, negotiated with defendants, and engaged in strategy and tactical decisions with Appel. The uncontradicted evidence from all parties, as well as from the judge who handled the wrongful death action, was that Roos participated fully and performed his share of the work to prepare for trial—he was not simply following Appel's lead.

Nevertheless, Judge Rozar erroneously found that Roos and Appel were not equal participants. He explained:

> I don't think he [Roos] ever tried a case to a jury before. He may have mentioned one before.... And I don't think he had ever prepared a case like this before. I think she [Appel] did most of the work on the preparation and he sort of followed.

There was insufficient evidence for Judge Rozar's conclusion that the two attorneys were anything but equal participants. In fact, the evidence requires the contrary. In explaining their working relationship in this case, Appel averred: "All decisions [in the wrongful death case] were joint. All strategies were joint. The decisions to turn down what were pretty decent offers toward the end were joint. The emotional upheaval in our lives was just as much his as it was mine."

---

**3.** This case is similar to *In re Weeks,* 255 Ill. App.3d 945, 194 Ill.Dec. 399, 627 N.E.2d 736 (3 Dist.1994). In *Weeks,* the court held that the attorneys were entitled to their contingent fee where it found nothing unreasonable in the terms and the guardian ad litem failed to demonstrate the agreement was unreasonable.

Furthermore, Judge Rozar's contention that Roos lacked trial experience and trial preparation is likewise unfounded. Roos testified that he had from five to ten trials and over 200 other court appearances. His ten years of work in the personal injury field caused him to prepare fully for trial on several occasions. More importantly, Roos was fully prepared to try this case. Additionally, Appel contended that she never handled a jury trial in a wrongful death case, and the record is silent on her other jury trial experiences; however, she was awarded her entire contingent fee. Appel testified that if she had been incapable of trying the case, Roos would have taken over as lead chair. There is no evidence to refute this testimony. Judge Rozar merely chose not to accept Appel's and Roos's testimony—the only evidence on this issue—that Roos was capable if substitution was necessary.

### III. CONCLUSION

Although Judge Rozar admitted that Roos was diligent in his representation of his clients and that he achieved an excellent result, Judge Rozar erroneously concluded that Appel, as the lead attorney, bore all the responsibilities and was more of a trial expert than Roos. Because we find insufficient support in the record to uphold Judge Rozar's conclusions, we reverse the probate court's judgment and remand with instructions to award Roos his contingent fee.

LANKFORD, P.J., and GARBARINO, J., concur.