971 A.2d 368

**Michael BLACKBURN, et al.**

v.

**ERIE INSURANCE GROUP.**

**No. 0210, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 11, 2009.

Michael L. Sandul of Odenton, for appellant.

Charles E. Wilson, III (Amy L. Leone, McCarthy Wilson, LLP on the brief), Rockville, for appellee.

Panel: SALMON, MEREDITH and WOODWARD, JJ.

SALMON, J.

David and Brigitte Blackburn filed a complaint for declaratory relief against Erie Insurance Exchange (hereinafter "Erie").[1]  Erie filed an answer to the complaint and subse-

---

1.  In the complaint, Erie was mistakenly identified as "Erie Insurance Group."  Erie filed with its appellate brief a Consent Motion to Correct the Caption, correcting its name to "Erie Insurance Exchange."

quently the parties entered into a stipulation of facts that reads as follows:

1. On August 12, 2004, Michael David Blackburn was involved in a motor vehicle accident allegedly caused by the negligence of Patrick Joseph Quinn;

2. Mr. Blackburn allegedly suffered serious injuries as a result of the incident;

3. That at the time of the automobile accident, Michael David Blackburn was acting within the scope of his employment with the United States government;

4. That a claim was filed for benefits under the Federal Employees Compensation Act for the Plaintiff with the United States Department of Labor;

5. The United States Department of Labor asserted a worker's compensation lien in the amount of Two Hundred Forty Six Thousand Three Hundred Five Dollars and Sixty-six Cents ($246,305.66);

6. That at the time of the incident, the Plaintiff was covered under a personal automobile policy with the Defendant, Erie Insurance Company, which provided uninsured/under insured motorist benefits in the amount of $250,000 per person;

7. At the time of the incident, the alleged tortfeasor, Quinn, was insured by State Farm Insurance Company under a policy of insurance providing liability limits of $100,000 per person;

8. On January 17, 2005, State Farm offered its policy limits of $100,000 to the Plaintiff;

9. That the Plaintiff accepted the $100,000 in compliance with Maryland Insurance Article § 19–511 and thereafter paid to the Department of Labor $27,396.28 in reimbursement of the worker's compensation lien;

10. That the lien was thereafter closed by the United States government;

11. That the plaintiffs believe Erie Insurances [sic] liability is $150,0000;

12. That Erie Insurance believes its liability to the Plaintiffs does not exceed $3,694.25; [2]

13. That the parties request that the Court determine under statute what the proper reductions are from the Erie Insurance UM/UIM policy.

Both the Blackburns and Erie filed motions for summary judgment based on the agreed statement of facts. The Circuit Court for Frederick County granted the summary judgment motion filed by Erie on February 29, 2008. As part of that judgment, the court declared "that the liability of . . . [Erie] is $3,694.34." The court also filed a seven-page written opinion in which it explained its reasons for ruling against the Blackburns and in favor of Erie.

The issue that separates the parties is the correct interpretation of Maryland Code (2006 Repl.Vol.), Insurance Article, § 19–513(e), which reads:

(e) *Reduction due to workers' compensation benefits.*—Benefits payable under the coverages described in §§ 19–505 and 19–509 of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed.

Section 19–505 of the Insurance Article deals with personal injury protection coverage and section 19–509 concerns uninsured/underinsured motor vehicle coverage. *See Hoffman v. United Services Auto. Asso.*, 309 Md. 167, 178, 522 A.2d 1320 (1987) (dealing with section 541(c) of Article 48A of the Maryland Code (1957,1986, Repl.Vol.), which was the section of the Maryland Insurance Code that governed uninsured/underinsured motorist coverage prior to its re-codification into the present Insurance Article).

---

2. Erie's arithmetic was off by nine cents. Under its method of calculation, the actual amount due would have been $3,694.34 [$250,000–$100,000(State Farm payment)$150,000 less $146,305.66].

Erie now interprets section 19–513(e), as applied to the facts here presented, as meaning that it is obligated to pay the Blackburns zero dollars under the uninsured/underinsured provisions of its policy. Erie's position is based on the following calculations: the Blackburns had uninsured/underinsured motorist coverage in the amount of $250,000 and it was entitled to deduct $100,000–the amount that the Blackburns received from Quinn's insurer—from that figure. Erie further contends it was entitled to deduct the sum of $218,909.38. That $218,909.38 figure was calculated by deducting $27,396.28 (the amount that the Blackburns paid back to the federal government) from $246,305.66 (the amount that Mr. Blackburn had received in worker's compensation benefits from the federal government). Given the fact that $218,909.38 exceeded $150,000 by more than $68,000, it is Erie's position that it owes nothing to the Blackburns.

It is important to note that Erie's present position is slightly different from the position it took in the circuit court. In the circuit court, Erie admitted that it owed $3,694.34 to the Blackburns. That admission was based on the assumption that the Blackburns had repaid the U.S. government the entire amount that they received from State Farm, i.e., $100,000.00. Erie's calculations in the circuit court were as follows: $250,000 minus $100,000 (paid by State Farm equals $150,000. From this figure Erie deducted $146,305.66, which was the part of the workers' compensation lien that Erie believed that Blackburn had not repaid the government— $150,000.00–$146,305.66 equals $3,694.34).

The Blackburns admit that even though the underinsured policy limits set forth in their policy with Erie was $250,000, Erie was entitled to deduct the $100,000.00—the amount that they received from State Farm. The Blackburns contend, in essence, that when the U.S. government received $27,396.28 it closed its lien against them and, as a consequence, the federal government had been fully reimbursed. Therefore, according to the Blackburns, Erie owes them $150,000.00. Appellants express that argument as follows:

The workers' compensation provider, in this case, voluntarily agreed to accept a portion of the recovery from Mr. Quinn's liability policy as reimbursement for the benefits it had provided to Mr. Blackburn.

If the United States is satisfied with the payment by Mr. Blackburn, Erie has no cause to assert that the government has not been reimbursed. Nor should Erie be allowed to escape its contractual obligations to pay for underinsured motorist coverage because the United States did not demand a dollar-for-dollar reimbursement for the benefits that it had provided.

The Circuit Court for Frederick County, in declaring the rights of the parties, rejected the Blackburns' interpretation of section 19–513(e), saying:

When the Court considers the statute as a whole, including its amendment and other statutes in the scheme, the Court finds that under the circumstances and facts of this case, satisfaction of the lien is not synonymous with reimbursement as contemplated by § 19–513(e). To do otherwise would defy common sense. It would result in a duplication of benefits, indeed a windfall, to the Plaintiff. . . . .

## II

Section 19–513(e) of the Insurance Article was amended in 2001. Prior to the amendment, section 19–513(e) read: "benefits payable under the coverages described in §§ 19–505 and 19–509 of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government."

Recently, the Court of Appeals interpreted the word "recover" as used in section 19–513(e) to mean " 'to get,' 'to obtain,' 'to come into possession of,' 'to receive.' " *Parry v. Allstate Insurance, Co.,* 408 Md. 130, 145, 968 A.2d 1053 (2009) (citing *inter alia, State Farm Mutual v. Insurance Commissioner,* 283 Md. 663, 671, 392 A.2d 1114 (1978)).

The 2001 amendment added to that last provision the words "for which the provider of the workers' compensation benefits has not been reimbursed." Section 19–513(e) has not been amended since 2001. Therefore, the statute reads in pertinent part: "Benefits payable under the coverages described in ... § 19–509 of this subtitle shall be reduced to the extent that the recipient has *recovered* benefits under the workers' compensation laws of a state or federal government for which the provider of the workers' compensation benefits has not been reimbursed." (Emphasis added). Plainly appellant recovered $246,305.26 in workers' compensation benefits and his employer was reimbursed for only $27,396.28 of its payments.

The purpose of the amendment is set forth in Chapter 392, Laws of Maryland, as follows: "For the purpose of limiting the reductions available to personal injury protection and uninsured motorist insurers to the extent that the workers' compensation insurer is able to recover benefits paid under the workers' compensation laws of a state or the federal government."

A clear example of the situation the amendment sought to remedy is provided by the case of *State Farm Mut. v. Ins. Comm'r*, 283 Md. 663, 392 A.2d 1114, (1978). At issue in the State Farm case was the correct interpretation of Maryland Code (1957, 1972 Repl.Vol., 1978 Cum.Supp.), Article 48A, section 543(d), which was the predecessor statute to section 19–513(e).[3] The Court of Appeals set forth the pertinent facts in *State Farm* as follows:

> Patrick Morris was employed on July 31, 1974, by the Washington Gas Light Company. While driving his own automobile in the course of his employment, Morris's vehicle was struck in the rear. Consequently, he sought and recovered workmen's compensation benefits in the amount of $379.50 from his employer's insurance carrier. Subse-

---

**3.** Maryland Code (1957, 1986 Repl.Vol.), Article 48A, which included section 543(d) was recodified into Maryland Code (1995, 1997, Repl. Vol.), Title 19, subtitle 5 of the Insurance Article by 1996 Maryland Laws, Chapter 11.

quently, Morris pursued a tort claim against the negligent third party, and this resulted in a settlement. Out of the settlement proceeds, Morris reimbursed $379.50 to the workmen's compensation insurance carrier, as required by Code (1957, 1964 Repl.Vol., 1978 Cum.Supp.), Art. 101, § 58. Morris then filed a claim for PIP benefits in the amount of $1,119.28 against his own automobile insurance carrier, State Farm Mutual Automobile Insurance Company. State Farm paid only $739.78, maintaining that under § 543(d) of Art, 48A, the $1,119.28 PIP benefits should be reduced by the $379.50 workmen's compensation benefits which Morris received.

Morris filed a protest with the Insurance Commissioner, arguing that since he paid back to his employer's workmen's compensation carrier $379.50 out of the proceeds of the settlement with the tortfeasor, he had not "recovered" workmen's compensation benefits within the meaning of § 543(d). A hearing on the protest was held on August 26, 1975, attended by Morris and his attorney as well as by a representative of State Farm and its attorney. More than thirteen months later, on October 5, 1976, the Insurance Commissioner rendered a decision, holding that Morris's receipt of the $379.50 workmen's compensation benefits was "only a technical, and not a true receipt, a [receipt] in name only, and certainly does not fall within the purview of the Statute as monies 'recovered.'" The Commissioner ordered State Farm to pay Morris $379.50 plus interest.
283 Md. at 665–66.

In the *State Farm* case, the Court rejected the Insurance Commissioner's theory "that a claimant who has in fact obtained certain monetary benefits, has nevertheless failed to 'recover' those benefits if he must later, out of different proceeds, covering the same loss, repay an equivalent sum of money." The *State Farm* Court said:

The critical words in the statute are "has recovered." The general meaning in law of the verb "to recover" is "to get," "to obtain," "to come into possession of," "to receive." *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, 962

(N.D.Ill.1972); *Covert v. Randles,* 53 Ariz. 225, 231, 87 P.2d 488, 490 (1939); *Swader v. Flour Mills Co.,* 103 Kan. 703, 704, 176 P. 143, 144–145 (1918); *Black's Law Dictionary,* p. 1440 (rev. 4th ed.1968); *Webster's New International Dictionary of the English Language,* p.2081 (2d ed. unabridged, 1961). In a narrower sense, "to recover" means "to succeed in a [legal] proceeding," *Webster's New International Dictionary of the English Language, supra,* or "to obtain in any legal manner in contrast to voluntary payment," *Black's Law Dictionary, supra. See also Union Petroleum S.S. Co. v. United States,* 18 F.2d 752, 753 (2d Cir.1927), *cert denied,* 274 U.S. 760, 47 S.Ct. 770, 71 L.Ed. 1338 (1927); *Garza v. Chicago Health Clubs, Inc., supra,* 347 F.Supp. at 962; *Covert v. Randles, supra,* 53 Ariz. at 231, 87 P.2d 488. Under either the general meaning of the word or the more narrow meaning, Mr. Morris, the insured, "recovered" workmen's compensation benefits when he received $379.50 from his employer's insurance carrier as a result of his claim under the workmen's compensation law.

The Insurance Commissioner's theory is that a claimant, who has in fact obtained certain monetary benefits, has nevertheless failed to "recover" those benefits if he must later, out of different proceeds covering the same loss, repay an equivalent sum of money. The accepted definition of the verb "recover" simply does not support this concept. Interpreting § 543(d) in such a manner would be ignoring the plain language of the statute and "resorting to subtle or forced interpretations for the purpose of ... limiting ... its operation." *Wheeler v. State, supra,* 281 Md. at 596, 380 A.2d 1052.

283 Md. at 671–72, 392 A.2d 1114.

As can be seen, at least arguably, the State Farm Court reached an unfair result by forcing the insured to reimburse the personal injury protection insurance carrier for monies the insured had already repaid to the workers' compensation carrier. To remedy that problem, section 19–513(e) was amended to allow the carrier to deduct only the monies that the insured had not already paid back.

■ As mentioned earlier, the Blackburns contend that the United States Government, as the workers' compensation provider, "voluntarily agreed to accept a portion of the recovery from ... [State Farm's] policy as reimbursement for the benefits it had provided to Mr. Blackburn." Although it is not outcome determinative, it appears that the agreement on the part of the federal government was not, as suggested by the appellants, "voluntary," at least if the word is used to suggest that the government, for some reason, charitably agreed to take less than what it was owed. This is made clear by 5 U.S.C.S. § 8132 (Lawyers Ed.1987), which reads:

§ 8132. Adjustment after recovery from a third person.

If an injury or death for which compensation is payable under this subchapter [5 USCS §§ 8101 et. seq.] is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. No court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States. The amount refunded to the United States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an

amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States.

Unlike the situation in *State Farm v. Ins. Comm'n*, the workers' compensation carrier in this case was not paid back, dollar for dollar, what it paid out to Mr. Blackburn in workers' compensation benefits.

Section 19–513(e) is unambiguous. That section, insofar as is here pertinent, provides that benefits payable under policies providing underinsured motor vehicle coverage "shall be reduced to the extent that the recipient [Mr. Blackburn] has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the worker's compensation benefits *has not been reimbursed.*" (Emphasis added). As shown by the stipulated facts, the federal government has not been "reimbursed" for more than $218,000.00 in workers' compensation benefits it paid to Mr. Blackburn.

The word "reimbursement" is commonly understood to mean "re-payment." A "useful starting point" in determining the plain meaning of a statutory term is that term's dictionary definition. *Comptroller of the Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 202, 950 A.2d 766 (2008) (*quoting Ishola v. State*, 404 Md. 155, 160, 945 A.2d 1273 (2008)). The *Merriam–Webster Dictionary* defines "reimburse" as "1. to pay back to someone; repay. 2. To make restoration of or equivalent to." The *American Heritage College Dictionary* defines "reimburse" as "1. to repay (money spent); refund. 2. To pay back or compensate (another party) for money spent or losses incurred."

It is true, as appellants stress, that the lien held by the federal government has been satisfied. But the accepted definition of the word "reimburse" simply does not support appellants' argument that a carrier has been fully "reimbursed" when it has not been repaid for all the monies it advanced to Mr. Blackburn.[4]

---

4. Mr. Janquitto's answer to the hypothetical quoted in the dissenting opinion (op. at 518–20, 971 A.2d at 377–79) is clearly correct. The

■ We recognize, of course, that the purpose of uninsured motorist coverage is to "assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorist." *Lane v. Nationwide Mutual Insurance Company*, 321 Md. 165, 169, 582 A.2d 501 (1990). But, as was observed in *Johnson v. Nationwide*, 388 Md. 82, 95, 878 A.2d 615 (2005), that

> purpose, however, is not without limits. The words of the statute itself delineate the extent of the statute's reach. *See Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 449, 849 A.2d 539, 547 (2004) (noting that the General Assembly's purpose in enacting the compulsory insurance statutes was not to assure *complete* insurance recovery for all victims of automobile accidents and reaffirming that the purpose did not extend beyond the prescribed statutory minimum coverage regarding the household exclusion); *see also Mayor & City Council of Baltimore v. Cassidy*, 338 Md. 88, 97, 656 A.2d 757, 762 (1995) (noting that the court "may not disregard the plain meaning" of the Workers' Compensation Act).

*Id.* at 95–96, 878 A.2d 615.

For the reasons set forth above, we hold that the plain language of section 19–513(e) allowed Erie to calculate the benefits payable under the underinsured motorist provisions of its policy by deducting from its $250,000.00—limits: 1) the amount that the Blackburns received from State Farm, and 2) the monies paid out by the federal government as workers' compensation benefits that Mr. Blackburn did not repay the government (over $218,000).

---

insurer obviously should not be allowed to deduct $20,000.00 from the amount it owes to the insured, because in the hypothetical the $20,000.00 had already been repaid by the insured to the workers' compensation carrier. But that result is mandated by the express language of section 19–513(e), as amended, not, as Mr. Janquitto says, by "the spirit of the UM Statute. . . ."

The above holding, ordinarily, would mean that we would vacate the judgment entered by the circuit court to the extent that the court declared that Erie owed the Blackburns $3,694.34. A problem arises with such a disposition, however, for two reasons.

■ First, Erie filed a memorandum of law in the circuit court in which it stated: "Erie's liability to Plaintiff Blackburn is $3,694.25 ($250,000–$100,000, pursuant to § 19–509(g)=$150,000; $150,000–($246,305.75–$100,000), pursuant to § 19–513(e)=$3,694.25)." Ordinarily, a party cannot take a position in an appellate court that materially differs from the position taken in the circuit court.

■ Secondly, and perhaps more important, Erie never filed a cross-claim. And, without a cross-claim being filed, we have no authority to amend the judgment so as to benefit an appellee. Accordingly, we will adopt an alternative suggestion made by Erie, which is that we simply affirm the judgment entered by the Circuit Court for Frederick County.[5]

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**

MEREDITH, J.

Because the majority opinion misconstrues the legislature's intent for the workers' compensation offset, and deprives the insured of the underinsured motorist coverage for which the insured paid premiums, I dissent.

Andrew Janquitto, Esquire, in his treatise entitled MARYLAND MOTOR VEHICLE INSURANCE (2d ed.1999), describes the development of underinsured motorist coverage, noting in § 8.6 at 308: "UM coverage [*i.e.*, uninsured/underinsured motorist coverage] in Maryland was originally designed to place the accident victim in the same position he or she would occupy if the uninsured tortfeasor maintained liability cover-

---

**5.** At oral argument Erie acknowledged that if we agreed with its position, the judgment should simply be affirmed and it would be required to pay appellants $3,694.34.

age in an amount equal to the minimum required coverage under the financial responsibility laws of Maryland." That purpose has evolved, Mr. Janquitto explains, into one of placing the accident victim in the same position the victim would occupy if the underinsured tortfeasor maintained liability insurance coverage equal to the limits of coverage under the victim's own underinsured motorist policy. Mr. Janquitto summarizes the progression of the statutory scheme as follows, *id.* at 314 (footnotes omitted):

> The 1981 and 1983 amendments modified the underlying purpose of the UM statute. Before the introduction of reduction underinsured motorist coverage in Maryland, courts uniformly stated that the purpose of UM coverage was to place the insured in the same position he or she would have occupied if the uninsured tortfeasor maintained the minimum amounts of required security mandated by Title 17 of the Transportation Article. In light of the 1981 and 1983 amendments, the UM statute is now designed to place the injured insured in the same position he or she would have occupied if the tortfeasor maintained liability insurance in amounts equal to the injured insured's uninsured motorist limits. Thus, the financial responsibility provisions of Title 17 are no longer the benchmark. Rather, the injured insured's uninsured motorist limits are now the guide. This is a substantial change in the public policy, and, in this regard, it is no longer accurate to state that the UM statute is designed solely to protect victims from financially irresponsible uninsured motorists. A motorist may, under the current statute, be financially responsible, yet still, by statutory definition, be uninsured because he or she is not as financially responsible as the injured motorist.

In the present case, Blackburn purchased from Erie uninsured/underinsured motorist coverage providing benefits with a limit in the amount of $250,000 per person. Accordingly, under Maryland's statutory scheme, Blackburn was entitled to be placed in as good a financial position as he would have enjoyed if the negligent driver had maintained liability insurance with a limit of $250,000 per person. The statutory

construction adopted by the majority opinion does not achieve such a result.

The majority opinion interprets the statutory offset described in Maryland Code (1997, 2006 Repl.Vol.), Insurance Article, § 19–513(e) in a manner that is, in my view, (a) not consistent with the expressed legislative purpose set forth in the enacting statute, and (b) not consistent with the overall objective of underinsured motorist insurance, *i.e.*, permitting the insured to recover an amount based upon his own policy's UM limits rather than the tortfeasor's inadequate policy limits.

As Mr. Janquitto points out in § 8.10(C) of his treatise at 419, § 19–513(e) "is designed to prevent double recovery." That being so, Mr. Janquitto notes that the offset is intended to be applied in a manner that nevertheless enables the injured party to receive the benefit of the underinsured motorist coverage for which he has paid:

> Section 19–513 (e)'s offset provision reflects a legislative intent that the injured worker's UM claim be excluded by the availability of workers' compensation benefits only to the extent necessary to avoid a double recovery. To hold that an injured worker is restricted to filing a workers' compensation claim and to pursuing the uninsured motorist, from whom he or she will, no doubt, not be able to collect even if he or she obtains a judgment, is inconsistent with the public policy of providing a full recovery to a victim of an uninsured motorist. UM coverage and workers' compensation provide separate and distinct types of coverage, but workers' compensation benefits certainly do not compensate the injured worker fully.

*Id.* at 421 (footnotes omitted). In one of the footnotes to the above quoted passage, Mr. Janquitto emphasizes that "[w]orkers' compensation benefits do not provide for pain and suffering, but UM coverage does." *Id.* at 421 n. 582. The purpose of Maryland's uninsured motorist insurance statute remains the same even when the victim receives workers' compensation benefits: "The UM Statute, with the workers' compensation

offset, is designed to place the insured in the position he or she would have occupied had the tortfeasor had liability insurance in an amount equal to the insured's UM coverage." *Id.* at 424.

Mr. Janquitto gives the following hypothetical to illustrate the correct result when the workers' compensation lien has been satisfied out of the amount paid pursuant to the tortfeasor's liability policy, *id.* at 424–25:

> The following hypothetical illustrates this situation: An insured is seriously injured while working. His damages exceed $100,000. The insured has collected $20,000 in workers' compensation. The tortfeasor has a liability policy that provides $50,000 of coverage. The insured has a motor vehicle policy that provides $100,000 of UM coverage. The policy allows an offset of workers' compensation benefits received by the insured. The insured collects the $50,000 from the tortfeasor's liability insurer and satisfies the workers' compensation insurer's subrogation interest by repaying the $20,000. The insure[d] then seeks $50,000 from his or her UM insurer, which claims that its policy and the UM Statute allow for a reduction of workers' compensation benefits. From this, the UM insurer takes the position that it owes $30,000 ($100,000 uninsured motorist limit minus $50,000 from the tortfeasor minus $20,000 of workers' compensation). This position is untenable because the spirit of the UM Statute would be violated if the UM insurer were allowed to take the offset. Again, the analysis must focus on what the insured would have received had he or she been injured by a tortfeasor with $100,000 of liability coverage. The answer is that the insured would have netted $100,000 ($20,000 in workers' compensation benefits plus $100,000 in liability coverage minus $20,000 to pay back the workers' compensation).

The extra wrinkle that is presented by Blackburn's case is that the workers' compensation carrier—more precisely, the United States Department of Labor, acting pursuant to the Federal Employees' Compensation Act—accepted an amount less than the total benefits paid, and accepted such lesser

amount in full satisfaction of its right to seek reimbursement of any amounts paid to Blackburn. Erie argued that, under § 19–513(e), it was entitled to reduce its UM liability to its insured by the entire amount of the workers' compensation benefits paid to Blackburn over and above the amount which Blackburn paid in full satisfaction of the lien, notwithstanding the fact that the workers' compensation carrier has waived any further claim for reimbursement of benefits. So, even though Blackburn owes no further reimbursement to the workers' compensation provider, Erie claims that it is still entitled to reduce its underinsured motorist benefit by the amount for which the workers' compensation provider waived reimbursement. The majority opinion adopts Erie's position as correct. The result is that the victim of the auto accident, Blackburn, ends up with uncompensated damages for which his own underinsured motorist carrier escapes responsibility, even though there is no outstanding balance for which the workers' compensation provider seeks any further reimbursement.

This result does *not* place the insured in as good a position as he would have occupied if the tortfeasor had maintained similar policy limits of $250,000. Under a scenario in which the negligent driver maintained policy limits of $250,000, Blackburn would have received $246,305.66 from the workers' compensation provider, and he would have received the $250,000 policy limits from the tortfeasor's insurance carrier, out of which he would have had to reimburse the workers' compensation provider $27,396.28 to satisfy its lien.[6] The net recovery to Blackburn would have been $468,909.38 (*i.e.,* $246,305.66 plus $250,000 minus $27,396.28). That is $150,000 more than the amount the majority opinion holds that Blackburn is entitled to (which was $318,909, based upon

---

6. Although it is possible the Department of Labor would have required reimbursement in an amount greater than the $27,396.28 it accepted in full satisfaction of its lien if it had known that the tortfeasor's policy limits were $250,000, we have no evidence of that in the record, and must assume, for current purposes, that the lien could have been compromised for the same amount as it was in this case.

$246,305.66 from the workers' compensation carrier, plus $100,000 from the tortfeasor's insurance carrier, minus the $27,396.28 paid to satisfy the lien of the workers' compensation carrier).

The difference in these results cannot be justified by a policy consideration of avoiding double recovery by the accident victim. It is agreed in this case that Blackburn's damages would not be fully compensated in either event. There would be no double recovery by Blackburn under either scenario.

The recent Court of Appeals decision in *Lynne Parry, Personal Representative of the Estate of Mark Parry, Deceased v. Allstate Insurance Company,* 408 Md. 130, 968 A.2d 1053 (2009), does not alter my view. The *Parry* case gave no indication that the workers' compensation carrier's right of reimbursement in that matter had been satisfied by compromise. Indeed, the *Parry* case indicates in footnote 6 that the Court of Appeals did not consider the reimbursement limitation in § 19–513(e) to be pertinent to the issues there under consideration.

When § 19–513(e) was most recently amended, Chapter 392 of the Laws of 2001 specifically stated that the General Assembly's "purpose" was ***limiting the reductions available*** to personal injury protection and uninsured motorist insurers ***to the extent the workers' compensation insurer is able to recover benefits paid*** under the workers' compensation laws of a state or the federal government." (Emphasis added.) We do not need to resort to any aids to statutory construction to divine the General Assembly's intent. The legislature's intent is stated explicitly in the enactment itself. And that expressed purpose is *to limit the offset* that may be taken by an uninsured motorist insurer *to the extent* that the workers' compensation insurer "*is* able to recover" (emphasis added) the benefits that have been paid. The limitation in § 19–513(e), as amended, should be read in a manner that is consistent with that stated purpose.

Plainly, at all times since Blackburn made his claim upon Erie for underinsured motorist benefits, because the lien had already been fully satisfied, the amount which Blackburn's workers' compensation insurer "is able to recover" for benefits paid is zero dollars. And that should have been "the extent" of the reduction available to Erie for the workers' compensation offset under § 19–513(e). A contrary construction of the statute results in a windfall of nearly $150,000 to Blackburn's underinsured motorist insurance carrier. I consider that result contrary to the legislature's purpose and untenable. I would reverse.